FIRST FINANCIAL SAVINGS AND
LOAN ASSOCIATION, Plaintiff,

v.

David L. WINKLER, Defendant.

No. 82 C 7132.

United States District Court,
N.D. Illinois, E.D.

April 15, 1983.

Edward F. Streit, Jr., Aurora, Ill., for plaintiff.

Ronald B. Lorsch, Mathias & Schmarak, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

David Winkler ("Winkler") appeals from an order entered by Bankruptcy Judge Lawrence Fisher in No. 82 B 3795 (Bankr.N. D.Ill. July 28, 1982) (the "Order"). For the reasons stated in this memorandum opinion and order, the Order is affirmed.

### Facts[1]

Winkler and his wife executed a mortgage in favor of International Mortgage Co. in May 1975, and the mortgage was thereafter assigned to First Financial Savings & Loan Association ("First Financial"). In March 1981 First Financial filed a complaint to foreclose the mortgage in the Circuit Court of Cook County, Illinois. Judgment for foreclosure and sale (the "judgment") was entered by the Circuit Court June 4, 1981.

At the July 22, 1981 sheriff's sale conducted pursuant to the judgment, First Financial was the sole and successful bidder. On August 19, 1981 the Circuit Court entered an order approving the sale, and the same day First Financial received its Certificate of Sale (the "Certificate"). Under the Certificate and judgment Winkler's statutory period of redemption was to expire March 26, 1982.

On March 22, 1982 Winkler filed a petition under Chapter 13 of the Bankruptcy Code (the "Code," all citations to which are from Title 11 of the United States Code). On April 15 First Financial filed in the Bankruptcy Court a Complaint To Vacate Automatic Stay and for Leave To Foreclose Mortgage Lien, which Winkler answered and moved to dismiss May 10, 1982. At a May 12 hearing Winkler's motion was denied, and First Financial was granted leave (1) to amend its Complaint to include the Chapter 13 Trustee (the "Trustee") as a party defendant and (2) to request issuance of an alias summons. On June 11 the Trustee was served. First Financial's Complaint was heard July 28, and by the Order Judge Fisher (1) modified the automatic stay and restraining order as to First Financial and (2) granted First Financial leave "to continue the foreclosure proceedings pending in the circuit Court of Cook County, Illinois."

In challenging the Order Winkler asserts (Mem. 2–5; R.Mem. 1–3):

1. Code § 362 automatically stayed the running of his redemption period.

2. His Chapter 13 plan (the "Plan") may modify First Financial's rights to allow Winkler either (a) to pay the entire judgment through the Plan or (b) to reinstate the mortgage and to resume paying the regular monthly amounts and "accruing" mortgage arrearages through the Plan.

First Financial responds (Ans.Mem. 4–7):

1. Code § 362 is inapplicable when a foreclosure action has been completed by an order of sale and issuance of the Certificate.

2. Either modification arrangement proposed by Winkler would violate "the clearly defined rule that a security interest in real estate is to be protected to the

---

1. There is no dispute as to the evidentiary facts.

extent of requiring payments pursuant to the mortgage thereby including interest." First Financial cites no authority for that "rule." [2]

### Winkler's Right of Redemption

■ Under Illinois law the right of redemption is a purely statutory privilege but is generally to be construed liberally in favor of a foreclosed mortgagor. *Skach v. Sykora*, 6 Ill.2d 215, 219, 224, 127 N.E.2d 453, 455, 457 (1955); *Mutual Life Ins. Co. of New York v. Chambers*, 88 Ill.App.3d 952, 955, 43 Ill.Dec. 829, 832, 410 N.E.2d 962, 965 (1st Dist.1980). Nevertheless the right is determinate. After a creditor-mortgagee obtains entry of a judgment of foreclosure and sale, the mortgagor's *only* substantive legal or equitable right is his right to redeem the property by paying the judgment (and related charges) in full within the specified time period. *In re Jenkins*, 14 B.R. 748, 750 (Bkrtcy.N.D.Ill.1981); *In re Crawford*, 2 B.R. 589, 595 (Bkrtcy.N.D.Ill. 1980). *See also* 27 I.L.P. Mortgages § 543.

■ Moreover after entry of the judgment the mortgage foreclosed upon is merged into the judgment, so there is no longer a "mortgage" under which a Chapter 13 debtor can cure arrearages. *Id.* at § 419; *In re Young*, 22 B.R. 620, 622 (Bkrtcy.N.D.Ill.1982); *In re Kokkinis*, 22 B.R. 353, 354 (Bkrtcy.N.D.Ill.1982); *In re Jenkins*, 14 B.R. at 749–50. Thus as of the date of his filing his Chapter 13 petition Winkler had only his redemption right, and First Financial had purchased the property subject to that right. *Chambers*, 88 Ill. App.3d at 955, 43 Ill.Dec. at 832, 410 N.E.2d at 965.[3]

### Stay of the Redemption Period under Code § 362

■ Several courts have flatly said Code § 362 stays the running of the redemption period. *In re Simmons*, 23 B.R. 364, 366 (Bkrtcy.N.D.Ill.1982); *In re Jenkins*, 14 B.R. at 750 n. 2; *see also Bank of Ravenswood v. Patzold*, 27 B.R. 542, 542–43 (N.D.Ill. 1982). That reading cannot readily be squared with (1) the language of Code § 362 in light of Illinois mortgage law, (2) the relevant legislative history of Code § 362 or (3) the Code as a whole.

In general Code § 362 stays commencement or continuation of "proceedings" or "acts" against the debtor or the property of the bankruptcy estate as defined in Code § 541. It certainly stretches the language to regard the automatic ripening of the Certificate of Sale into a sheriff's deed[4] as a proceeding or act against the debtor or his "property" (which, once the Certificate had issued, was really only the right of redemption). After all the judgment and foreclosure sale are really the final "proceedings" in the foreclosure action itself. *See In re Jenkins*, 14 B.R. at 750. During the redemption period *Winkler* was the potentially active party who could "proceed" to redeem his property, and First Financial could not "proceed" or "act" at all.

That there is more than a semantic difficulty here can be seen by advancing the analysis to the time at which the redemption period would have lapsed. At that point First Financial arguably would have to "proceed" anew to obtain a deed to the property. *See Chambers*, 88 Ill.App.3d at 955, 43 Ill.Dec. at 832, 410 N.E.2d at 965. Yet by definition the right of redemption would already have lapsed before First Federal could have had any right to proceed, so

---

**2.** In fact First Financial has submitted little of use to its cause.

**3.** *Chambers*, 88 Ill.App.3d at 955, 43 Ill.Dec. at 832, 410 N.E.2d at 965, teaches *title* does not pass to a purchaser at a mortgage foreclosure sale until expiration of the redemption period and issuance of the deed. However *In re Crawford*, 2 B.R. at 595 (also under Illinois law) says a mortgagee-purchaser at a foreclosure sale owns all legal and equitable rights, subject

to divestiture by exercise of the debtor's redemption right. Whatever locution is employed, the mortgagor's right is one of redemption, whose exercise requires affirmative action—payment—by the mortgagor.

**4.** As n. 3 reflects, that ripening is automatic unless the debtor makes the full payment necessary to prevent it.

First Financial would not then be proceeding *against* the property of the debtor or of the estate:

1. Winkler's redemption interest in the realty, *In re Farnik,* 17 B.R. 856, 857 (Bkrtcy.N.D.Ill.1982), would have lapsed.

2. Nor would the estate have any transferred possessory interest, *In re Jenkins,* 14 B.R. at 750 n. 2. Consequently there would be no remaining property interest to be "obtained" by First Financial from the estate. *See* Code § 362(a)(3).

Accordingly, after a judgment of foreclosure and sale under Illinois law, there are no "proceedings" against a debtor's or an estate's property to which Code § 362 might apply.[5]

Illinois mortgage law thus makes the situation in this action comparable to what obtains when property is transferred subject to a judgment lien before a Chapter 13 petition is filed. Explaining the provision for stays of "issuance or employment of process" in Code § 362(a)(1), the House Judiciary Committee said (H.R.Rep. No. 595, 95th Cong., 2d Sess. 341, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6297):

The provision in this first paragraph prohibiting the issuance of process is designed to prevent the issuance of a writ of execution by a judgment creditor of the debtor to obtain property that was property of the debtor before the case, but that was transferred, subject to the judgment lien, before the case. Because the other paragraphs of this subsection refer only to property of the estate or property of the debtor, neither of which apply to this kind of transferred property, they would not prohibit pursuit of the transferred property by issuance of process. Thus, the prohibition in this paragraph is included and the judgment creditor is allowed to proceed by way of foreclosure against the property, but not by a general writ of execution (in the State court, or wherever the creditor obtained the judgment) against the debtor and all of the debtor's property.

By analogy that analysis clearly implies a mortgagee may finally foreclose property purchased at a foreclosure sale at the end of a redemption period without running afoul of Code § 362.

But if that were not enough (and in this Court's view it is), the clinching argument is suggested by Judge Fisher's remarks at the hearing of First Financial's Complaint (July 28, 1982 Tr. 7–9). Code § 108(b) provides an entirely separate mechanism for dealing with the kind of right a Chapter 13 petitioner has under Illinois redemption law:

Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

Under Code § 108(b) the Trustee thus had 60 days from the order for relief (or until May 22, 1982[6]) to exercise Winkler's redemption right. Because the Trustee did

---

**5.** True enough the Order spoke in terms of modifying the Code § 362 automatic stay and giving First Financial "leave to continue the foreclosure proceedings." But the analysis in this opinion demonstrates that characterization is inaccurate, and Judge Fisher's reference to Code § 108(b) (discussed later in this opinion) is really more consistent with the analysis here.

**6.** In this case the very filing of the Chapter 13 petition dates the "order for relief." Judge Fisher noted (July 28, 1982 Tr. 10) the 60 day period might perhaps be stretched to May 26 by adding the four days remaining in the redemption period when Winkler filed his Chapter 13 petition. This Court finds no predicate for that reading in Section 108(b), but it would make no difference anyway.

not do so, the right lapsed. *See* July 28, 1982 Tr. 9–11.[7]

■ This Court therefore finds the automatic stay under Code § 362 was conceptually inapplicable to First Financial.[8] *See In re Construction Leasing and Investment Corp.*, 20 B.R. 546, 547 (Bkrtcy.M.D.Fla. 1982) and *Bank of Commonwealth v. Bevan*, 13 B.R. 989, 994 (D.C.E.D.Mich.1981) (both holding Code § 362(a) does not override provisions of Code § 108(b) controlling the period of time in which a trustee may redeem a debtor's property). Winkler's right of redemption—his only property right—passed to the Trustee, whose ability to exercise that right was extended by Code § 108(b). Because the right was not exercised within the extended period it expired by its terms, and First Financial is entitled to obtain its deed.

*Modifying First Financial's Rights*

Winkler would fare no better if the opposite conclusion were reached—if Code § 362 were held applicable, so that a stay of the redemption period *was* automatically effective in the first instance. On the day of Winkler's Chapter 13 filing the parties' rights would still have been the same: First Financial had purchased the real estate subject to divestiture upon exercise of Winkler's redemption right, and Winkler was entitled to redeem the property in accord with Ill.Rev.Stat. ch. 77, § 18 (or its successor, *id.* ch. 110, § 12–122). On the assumption of Code § 362's applicability, the question would become whether the Code permits an alteration of First Financial's rights so that, instead of having the right to obtain its deed upon lifting of the stay and running of the redemption period, it could be required to accept reinstatement of the mortgage[9] or payment of the judgment through the Plan.

Code § 1322(b)(2) allows a debtor's plan to modify the rights of secured claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence." Winkler says Code § 1322(b)(2)'s exception clause is inapplicable here because First Financial's claim is secured not *only* by a "security interest"— which Code § 101(37) defines as a "lien created by an agreement"—but also by the judgment, a "judicial lien" as defined in Code § 101(27). That ingenious argument has found one receptive judicial ear. *In re Garner*, 13 B.R. 799, 801 (Bkrtcy.S.D.N.Y. 1981).

Winkler's contention is not only ingenious but metaphysical. Winkler argues First Financial wound up with less when it obtained more: It assertedly lost the protection of Code § 1322(b)(2) when it proceeded to judgment in foreclosing Winkler's mortgage. Stripped of its speciousness, Winkler's argument is simply implausible.

Winkler has misread the word "only" to fit his purposes. Instead the better reading is the one suggested by the legislative history. As the Senate Judiciary Committee explained, Code § 1322(b)(2) exempts "claims *wholly* secured by real estate mort-

---

7. This reading of Code § 108(b)'s purpose accords with the views of the Senate Judiciary Committee, S.Rep. No. 989, 95th Cong.2d Sess. 30, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5816:

    Subsections (a) and (b) [of Section 108] . . . permit the trustee, when he steps into the shoes of the debtor, an extension of time for filing an action or doing some other act that is required to preserve the debtor's rights.

8. As n. 5 indicates, the Order is unclear whether the stay was modified because it was ineffective as to First Financial from the beginning or because First Financial met a test for modification under Code § 362(d). That latter possibility is involved in the next section of the text discussion, in which it is assumed *arguendo* the

stay was originally effective as to First Financial.

9. Opting for the former course in *In re Simmons*, 23 B.R. at 366, one bankruptcy judge seems to have given insufficient weight to Illinois mortgage law or to have rested his decision on that court's inherent power under Code § 105. Another case, *In re Young*, 22 B.R. at 622–23, ordered reinstatement of an Illinois mortgage, but there the Chapter 13 petition was filed *before* a judgment sale had taken place. Winkler's citation to cases involving other states' laws, *In re Hubbard*, 23 B.R. 671 (Bkrtcy.S.D.Ohio 1982) and *In re Thompson*, 17 B.R. 748 (Bkrtcy.W.D.Mich.1982), do not help in his problem with Illinois law.

gages." S.Rep. No. 989, at 141, *reprinted in* 1978 U.S.Code Cong. & Ad.News at 5927 (emphasis added). That suggests the important thing is what in fact secures a creditor's claim, not what legal cloak a creditor may be given to wear.

■ Under Illinois law, although a mortgage is said to "merge" into a decree of foreclosure and sale, the only security for the mortgagee's claim remains the real property. Again *Chambers,* 88 Ill.App.3d at 955–56, 43 Ill.Dec. at 832–833, 410 N.E.2d at 965–66 makes that plain (citations omitted):

> After foreclosure of a mortgage and until delivery of the deed under the foreclosure sale, the purchaser acquires no title to the land either legal or equitable. Rather, title to land sold under a mortgage foreclosure remains in the mortgagor until the expiration of the redemption period and conveyance of the deed to the purchaser at the sale.... Upon redemption, the purchaser is entitled to the costs and interest on his investment.... As the *Skach* court explained: "The statute contemplates redemption where the value of the property exceeds the sale price. The purchaser knows this when he makes his bid, whether he is the mortgagee or a stranger, and when he is repaid all that the statute allows upon redemption, that is all he is either legally or equitably entitled to receive."

Just as before the foreclosure, the mortgagee who bids in at the foreclosure sale has (1) a right to receive payment and (2) a right to look to the real estate if payment is not made. That combination continues to fit the classic notion of a "security interest" in the real estate. All that has changed is that the mortgagee's ability ultimately to realize on the security interest in case of nonpayment is hedged about by fewer procedural hurdles.

■ Indeed Code § 362 unquestionably operates to prevent the mortgagee from proceeding under a foreclosure judgment against the debtor or his other property. Thus even after the judgment First Financial's claim continued to be secured *only* by what originated as its agreed-upon security

interest in Winkler's principal residence. Although now "merged" into the judgment decree, First Financial's interest remained a "security interest" within the meaning of Code § 101(37), and was therefore protected by Code § 1322(b)(2) from being modified by the Chapter 13 plan.

That non-modifiable status of First Financial's claim indicates why modification of the *stay* would be proper under Code § 362(d)(1). That section allows modification of a stay "for cause, including the lack of adequate protection of an interest in property" of a "party in interest" seeking such modification. Once it is acknowledged First Financial's "interest in property" includes the right to obtain its deed in the absence of timely payment, clearly no ingredient in Winkler's Plan would protect that right. Unless Winkler or the Trustee could redeem the property promptly, First Financial's specific right would be impermissibly modified in violation of Code § 1322(b)(2) unless the stay were lifted.

As Judge Fisher's remarks at the July 28 hearing implied, Code § 108(b) might well have operated to defer lifting of the stay to permit the Trustee to redeem within the 60-day period. At least after that time had elapsed without payment, the Order lifting the stay was unexceptionable. That limited time frame is not something of which Winkler can legitimately complain:

1. Had he filed in Chapter 13 *before* foreclosure, Code § 1322(b)(2) would have preserved First Financial's security interest only as to the mortgage's regular payment schedule. Winkler would have been protected against the pressure of other debt to enable him to meet the mortgage payments.

2. Had Winkler filed *promptly* after foreclosure, he would similarly have been freed from the pressure of other obligations, with the full statutory redemption period available to him to refinance his residence or otherwise raise funds to redeem the property.

By waiting until the last minute Winkler limited his own options, and he cannot fault

the Order for carrying out the Code's provisions.[10]

### Conclusion

However Code § 362 is treated, Judge Fisher's Order properly eliminated the stay as a bar to the ripening of First Financial's interest in the real estate. Accordingly the Order is affirmed.

---

10. This opinion has not addressed an issue Winkler *did not raise* in the Bankruptcy Court: the possible applicability of the Bankruptcy Court's broad power under Code § 105(a) either to extend the redemption period or to modify First Financial's interest in the proper-

ty. *See Patzold,* 27 B.R. at 543; *In re Simmons,* 23 B.R. at 366. On the contentions Winkler advanced before Judge Fisher and therefore preserved on this appeal, the Order was clearly correct.