**In re Tony SCHNUPP and Evelyn M. Schnupp, Debtors.**

**Bankruptcy No. 86 B 02413.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Sept. 9, 1986.

---

Tyler G. Neptune, Jr., Thomas G. McCracken, P.C., Geneva, Ill., for movant Bankers Life Co.

Leonard M. Groupe, Groupe & Katz, Chicago, Ill., for debtors.

## MEMORANDUM OPINION AND ORDER DENYING MORTGAGEE'S MOTION TO MODIFY AUTOMATIC STAY

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause comes upon the motion of BANKERS LIFE COMPANY ("Mortgagee") to modify the automatic stay. This Court heretofore ordered the stay to remain in effect until the final ruling thereon. For the reasons set forth below, the motion is now denied.

## PENDING MOTION

On October 22, 1985, after Debtors had fallen one year behind in their mortgage payments, Mortgagee sued debtors in the Circuit Court of Kane County, Illinois. The Complaint sought foreclosure of a mortgage on Debtors' home located at 117 Del Rio, Carpentersville, Illinois. That court entered Judgment of Foreclosure on January 9, 1986. A Sheriff's Sale was set for June 25, 1986.

On February 20, 1986, Debtors filed their Petition for Relief under Chapter 13 which invoked the automatic stay and prevented the sale from proceeding. On April 17, 1986, this Court confirmed the Debtors' Chapter 13 plan which proposed that Debtors would pay $546.00 to the Trustee over 31 months while making current payments outside the plan directly to Mortgagee.

On April 10, 1986, Mortgagee filed a motion to modify the stay. On May 8, 1986, this Court conducted a hearing on that motion at which it heard testimony from the Debtors. (Tr. May 8, 1986) The Debtors proposed to pay their mortgage arrearages through the plan and to maintain current payments outside the plan. The Mortgagee rejected the Debtors' proposal and refused all payments tendered thereunder. Those refused payments have been escrowed pending this ruling. Relying on Judge Eisen's ruling in *In re Jenkins*, 14 B.R. 748 (Bankr.N.D.Ill.1981), the Mortgagee asserted that the mortgage became due immediately upon entry of a Judgment of Foreclosure, and thus there was no longer a mortgage in existence under which arrearages could be cured. From the debtor's uncontested evidence the Court finds the property to be worth about $58,000. From the judgment of foreclosure, it appears that Debtors owed the Mortgagee $54,315.77 as of January 9, 1986, plus interest at the rate of 9% per annum thereafter. Debtors therefore have a small equity in the premises. That equi-

ty, when considered along with their willingness and ability to cure the arrearage in reasonable time and pay current mortgage payments, would afford adequate protection to the mortgagee.

## DISCUSSION

The question before this Court is whether, following mortgage acceleration and entry of Foreclosure Judgment but before foreclosure sale, a Chapter 13 debtor can still cure mortgage arrearages and reinstate the mortgage pursuant to 11 U.S.C. § 1322(b).

### 1. *Introduction.*

Many bankruptcy courts are in substantial disagreement over when a debtor can cure mortgage defaults that occurred prior to the filing of a Chapter 13 petition. *See First Investor Company v. Custer,* 18 B.R. 842, 845 (Bankr.S.D.Ohio 1982) ("This question has been litigated in several courts and the conclusions reached after well reasoned decisions are not uniform"); *In re Allen,* 17 B.R. 119, 121 (Bankr.N.D. Ohio 1981) ("Numerous courts have grappled with the question presented here reaching diametrically opposing results under substantially identical fact situations"); *Matter of Skelly,* 38 B.R. 1000, 1003 (D.Del.1984) ("The case law interpreting [§ 1332b] is in hopeless disarray").

It is generally accepted, however, that where mortgagor has defaulted but the mortgagee has not yet accelerated the outstanding debt, the mortgagor can cure the default through a Chapter 13 plan. *See In re Pearson,* 10 B.R. 189 (Bankr.E.D.N.Y. 1981). Courts are also largely in agreement that after a foreclosure sale, Chapter 13 affords a debtor no relief. *See Matter of Tynan,* 773 F.2d 177 (7th Cir.1983); *In re Gwinn,* 34 B.R. 936 (Bankr.S.D.Ohio 1983); *In re Hardin,* 16 B.R. 810 (Bankr.N. D.Tex.1982); *In re Mueller,* 18 B.R. 851 (Bankr.W.D.Ark.1982). *But see In re Kokkinis,* 22 B.R. 353 (Bankr.N.D.Ill.1982); *Thompson v. Great Lakes Federal Savings & Loan Association,* 17 B.R. 748 (Bankr.W.D.Mich.1982).

When the bankruptcy filing comes after acceleration but before foreclosure sale, courts have taken various positions: (1) that de-acceleration and reinstatement of the mortgage is unavailable once the mortgagee has accelerated regardless whether mortgagee has obtained a judgment (*see e.g., In re Soderlund,* 18 B.R. 12 (S.D.Ohio 1981)); (2) that de-acceleration is unavailable once the mortgagee has obtained a state court judgment on the note (*see e.g., Matter of Skelly,* 38 B.R. 1000 (D.Del. 1984)); and (3) that de-acceleration and reinstitution of the mortgage are possible even after the mortgagee has obtained a judgment on the accelerated mortgage note (*see e.g., In re Gwinn,* 34 B.R. 936 (Bankr. S.D.Ohio 1983)).

In the instant case, the Mortgagee urges this Court to adopt the position that de-acceleration is unavailable to a debtor once the mortgagee of Illinois property has obtained a state court judgment on the note. The Seventh Circuit in *Matter of Clark* 738 F.2d 869 (7th Cir.1984) held that de-acceleration is available after foreclosure judgment as to Wisconsin property. The Mortgagee, relying on *In re Jenkins,* 14 B.R. 748 (Bankr.N.D.Ill.1981), argues that Illinois is a "title theory" state and therefore the mortgage merged into the Illinois foreclosure judgment in this case. *See also First Financial Savings and Loan v. Winkler,* 29 B.R. 771 (N.D.Ill.1983). Therefore, Mortgagee reasons that there is now no debt in existence which can be cured through a Chapter 13 plan.

### 2. *Illinois is a "lien theory" state as to mortgages.*

Under the "title theory" of mortgages, the creation of a mortgage is a transfer of title to mortgagee; therefore upon default and foreclosure, the mortgage merges into the foreclosure judgment and there remains no debt to be cured. *In Re Young,* 22 B.R. 620, 622 (J. Hertz, Bankr. N.D.Ill.1982).

Illinois has often been referred to as a "title theory" state, see *In re Crawford,* 2 B.R. 589, 594 (Bankr.N.D.Ill.1980). Both Chief Judge Eisen of this Bankruptcy

Court and Judge Shadur of our District Court have pointed out that mortgages merge into foreclosure judgments. They conclude from that there remains no debt default to be cured in bankruptcy. See *Jenkins* and *First Financial supra.*

■ However, the Illinois Supreme Court has long held that the execution of a mortgage only creates a lien on the property. *Kling v. Ghilarducci*, 3 Ill.2d 454, 455, 121 N.E.2d 752 (1954). Title and the right to possession are retained by the mortgagor through the foreclosure process and only terminate upon expiration of the redemption period following foreclosure sale. *Lightcap v. Bradley*, 186 Ill. 510, 58 N.E. 221 (1900).

In *Kling, supra,* the Illinois Supreme Court held that title and right to possession are retained by the mortgagor through the foreclosure process and only terminate upon expiration of the redemption period following foreclosure. A recent Illinois Supreme Court decision reaffirmed the *Kling* finding that the execution of a mortgage creates a mere lien on real estate but no transfer of title. *Harms v. Sprague*, 85 Ill.Dec. 331, 334–45, 105 Ill.2d 215, 473 N.E.2d 930, 933–34 (1984). *See also Mutual Life Insurance Company of New York v. Chambers*, 88 Ill.App.3d 952, 43 Ill.Dec. 829, 410 N.E.2d 962 (1st Dist.1980).

Under Illinois law, therefore, a mortgagee has only a lien on the mortgaged property even after a judgment of foreclosure is entered. Title does not pass until after the redemption period expires following foreclosure sale. Even though the mortgage as a security instrument is said to be merged into the foreclosure decree, 27 *Illinois Law and Practice* ("I.L.P.") *Mortgages* § 419, it does not follow from Illinois law that following the foreclosure decree there is no debt default to be cured in bankruptcy. There remains under Illinois law an accelerated debt computed by the judgment that can be paid before foreclosure sale and even after sale until the end of the redemption period when title finally passes.

Thus, despite the entry of foreclosure judgment in state court, Debtors here still had title in their property at the time they filed their Chapter 13 petition.

3. *Application of § 1322(b)(5) in "lien" theory state.*

Section 1322(b) governs the content of any Chapter 13 plan that proposes to cure a mortgage default as to debtor's residence. It provides in pertinent part that the plan may:

\*      \*      \*      \*      \*      \*

(2) modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims;

(3) provide for the curing or waiving of any default;

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim nor secured claim on which the last payment is due after the date on which the final payment under the plan is due; ..."

Thus, § 1322(b)(5) indicates, notwithstanding § 1322(b)(2), that debtor can cure default within a reasonable time and maintain mortgage payments provided the last mortgage payment is due after the final payment under the plan. *See 5 Collier on Bankruptcy* ¶ 1322.01, at 1322–11 (15th Ed.1981). That statutory language, however, does not specify whether § 1322(b)(5) can be used to cure the debtor's default once the debt is accelerated and brought to judgment prior to the filing of the debtor's Chapter 13 petition.

In a case decided under Wisconsin law, the Seventh Circuit has interpreted § 1322(b)(5) as allowing debtor to cure default on a residential mortgage loan where the Chapter 13 petition is filed after state court enters foreclosure judgment. *Matter of Clark*, 738 F.2d 869 (7th Cir.1984). In reaching this conclusion, the *Clark* court recognized the interplay between § 1322(b)(2) and § 1322(b)(5). While noting

that § 1322(b)(2) does not permit a plan to modify a creditor's rights secured by an interest in debtor's residence, the concept of cure under § 1322(b)(5) is different:

> Since to cure means to restore matters to the way they were before the default, we think that the power to cure in § 1322(b) necessarily includes the power to de-accelerate the payments on the note. De-acceleration, therefore, is not a form of modification banned by (b)(2) but rather is a permissible and necessary concomitant of the power to cure defaults.

*Clark, Id.,* 738 F.2d at 872.

In *Clark* it was also contended, that as a result of acceleration, mortgagee's claim was not a claim on which the last payment was due after the date on which the final payment under the plan was due under § 1322(b)(5). The Court rejected that argument, stating that most notes provide that lenders can accelerate upon any default, and therefore it was likely that acceleration would occur before a debtor could file a Chapter 13 petition. Thus, the court construed the language in § 1322(b)(5) concerning the date of final payment as referring to the last payment due under the terms of the original note and mortgage, not after acceleration and judgment had occurred. Any other interpretation, said the Court, would render the provision, "all but meaningless," and would encourage debtors to file petitions at the earliest possible moment to avoid acceleration, rather than to attempt to negotiate with creditors. *Clark,* 738 F.2d at 874.

The *Clark* decision rested on the Court's reading of Wisconsin law, under which debtors still had an interest in their property when filing in bankruptcy:

> "Under Wisconsin law, a mortgagee has only a lien on the mortgaged property even after a judgment of foreclosure is entered. Neither equitable nor legal title passes until the foreclosure sale is held ..." *Matter of Clark* 738 F.2d 869, 871 (7th Cir.1984).

The Court in Clark found Wisconsin law:

> "... in contrast to states in which the mortgage is deemed 'merged' with the

judgment, *effectively transferring title to the mortgagee." Clark, Id.,* Fn. 3 at p. 871 (Emphasis added).

While Illinois law has long found the mortgage to "merge" into the foreclosure judgment, 27 I.L.P. *Mortgages* § 419 and cases cited, such "merger" has never passed title. Rather the concept of "merger" in Illinois is to fix the mortgagees' rights against mortgagors and to establish mortgagees' rights to receive title at a later date absent redemption. *Carter Oil Co. v. Durbin,* 34 N.E.2d 407, 376 Ill. 398, *cert. den. Koeberlein v. Durbin,* 314 U.S. 644, 62 S.Ct. 85, 86 L.Ed. 517.

Thus, the Illinois view of "merger" at foreclosure judgment is not what the *Clark* court says makes the crucial difference. In Illinois as in Wisconsin, no title passes upon foreclosure order because both states are "lien" states, not "title" states. Therefore, the *Clark* analysis applies here.

■ The *Clark* court held that power to cure a default provided by § 1322(b)(5) permits a debtor to de-accelerate payments due under a note secured by a residential property mortgage despite entry of foreclosure judgment. Likewise, this Court holds that the Debtors here can cure their Illinois mortgage arrearages under the plan and de-accelerate the mortgage payments pursuant to § 1322.

Had the foreclosure sale taken place prior to this bankruptcy filing, the result would of course be different. The question whether a debtor can cure a default and reinstate the mortgage pursuant to § 1322(b)(5) after the property has been sold is settled in this Circuit. In *Matter of Tynan,* 773 F.2d 177 (7th Cir.1983), the Seventh Circuit held that where a third party purchased the property at a sheriff's sale and satisfied the debt the debtor could not cure arrearages and reinstate the mortgage under a Chapter 13 plan. The *Tynan* court distinguished its earlier decision in *Clark* "because ... no foreclosure sale had occurred before the Chapter 13 petition was filed." *Tynan,* 773 F.2d 177, 179 n. 2 (7th Cir.1983). *See also First Financial*

*Savings and Loan Association v. Winkler,* 29 B.R. 771 (N.D.Ill.1983) (holding that § 1322(b)(5) is inapplicable where there had been an entry of judgment of foreclosure and sale). Thus, under *Tynan* and *Clark,* a debtor can cure a mortgage default under § 1322(b) at any time prior to the sale of the foreclosed property.

In reaching this conclusion, this Court has considered and rejected the argument that allowing debtors to reinstate mortgages already reduced to judgment would create uncertainty as to the finality of state court judgments. *See e.g., In re Pearson,* 10 B.R. 189 (Bankr.E.D.N.Y.1981); *In re Maiorino,* 15 B.R. 254 (Bankr.D.Conn. 1981). The Court finds the argument made by the bankruptcy court in *In re Gwinn,* 34 B.R. 936 (Bankr.S.D.Ohio 1983) to be persuasive on this point. As the *Gwinn* court stated:

> [The] fatal flaw in this argument is that it overlooks the broad equitable powers possessed by the bankruptcy courts by virtue of 11 U.S.C. § 105 and 28 U.S.C. §§ 1481, 1651. These powers when used in conjunction with state law, are more than sufficient to dispose of any potential uncertainty as to the effect of any state court judgment. By issuing an order, at the time of confirmation, restraining the mortgagee from taking any further steps to enforce its mortgage unless certain specified events occur, the debtor would be given protection against any further attempts at foreclosure both during the pending of the Plan and afterwards. Then, if the debtor successfully completes his Plan, the court could use its equitable powers to order the mortgagee to take whatever actions are necessary to remove from record any certificates of judgment or decrees of foreclosure that may be pending. Finally, upon the successful completion of the Plan, the court could order the mortgagee to join with the debtor to petition the state court from relief from the foreclosure judgment. In this way, the effect of the previous judgment could be settled one way or the other. If the debtor should again fall into default, the injunction could be vacated and the mortgagee allowed to proceed with its foreclosure. If, on the other hand, the debtor cures the previous default and maintains his current obligations on the reinstated mortgage, the final mandatory injunction would enable him to eliminate the cloud on his title imposed by the state court judge.

*Id.* at 943–44.

#### 4. *Lien theory avoids conflict with federal law.*

■ Mortgagee's position, rejected hereinabove, is that *Clark* is not controlling because Illinois is a "title theory" state. Even if that were so under Illinois law, that would not determine whether a debtor can de-accelerate and reinstate a mortgage defaulted and foreclosed before the filing of the debtor's Chapter 13 petition. While under federal bankruptcy law the property rights of debtors and creditors are generally determined by state law, it is also true that where state law frustrates or burdens federal policy that state law must give way. *See In re Taddeo,* 685 F.2d 24 (2d Cir.1982). *See generally* Hart, *The Relations Between State and Federal Law,* 54 Col.L.Rev. 489 (1954).

Article VI of the United States Constitution requires state law to give way if it frustrates the implementation of a federal statutory scheme enacted by Congress pursuant to one of its enumerated powers.[1] Chapter 13 was enacted pursuant to Article I, section 8, clause 4 of the Constitution which authorizes Congress to "establish uniform laws on the subject of Bankruptcies throughout the United States." A number of courts have therefore concluded

---

1. Article VI provides:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI.

that by enacting Chapter 13, Congress has preempted some state activity on matters affecting bankruptcies. *See In re Hardin,* 16 B.R. 810 (Bankr.N.D.Tex.1982); *First Investory Company v. Custer,* 18 B.R. 842 (Bankr.S.D.Ohio 1982); *In re Gwinn,* 34 B.R. 936 (Bankr.S.D.Ohio 1983); *In re Taddeo,* 685 F.2d 24 (2d Cir.1982); *In re Ivory,* 32 B.R. 788 (Bankr.D.Ore.1983); *In re Young,* 22 B.R. 620 (Bankr.N.E.Ill.1982); *Thompson v. Great Lakes Federal Savings and Loan Association,* 17 B.R. 748 (Bankr.W.D.Mich.1982); *In re Chitwood,* 54 B.R. 396 (Bankr.W.D.Va.1985); *In re Johnson,* 29 B.R. 104 (Bankr.S.D.Fla.1983); *In re Nelson,* 59 B.R. 417 (9th Cir., B.A.P., 1985). *But see Matter of Skelley,* 38 B.R. 1000, 1006 (D.Del.1984) ("If Congress desired the bankruptcy courts to modify, suspend or otherwise ignore state court judgments in section 1322(b) it would have used explicit language").

The Fifth Circuit recently summed up its position on the impact of state law on applicability of § 1322(b):

To permit for Chapter 13 purposes, the variations of the laws of different states to govern the effect of an acceleration and its curability would be to defeat one of Congress' important purposes in exercising its preemptive bankruptcy powers under the federal Constitution, to provide by Chapter 13 a uniform national remedy by which to adjust debts of individuals with regular incomes as an alternative to their being forced to undergo liquidating bankruptcy. Along with [the Second Circuit Court of Appeals] "we do not believe that Congress labored for five years over this controversial question only to remit consumer debtors—intended to be the primary beneficiaries of the new Code—to the harsher mercies of state law."

*Grubbs v. Houston First American Savings Association,* 730 F.2d 236, 241–42 n. 9 (5th Cir.1984).

Chapter 13 is silent on the right of a bankruptcy court to reinstate a preacceleration payment schedule. But the conclusion of the Second Circuit that the right to cure is "implicit" in section 1322 is persuasive. *In re Taddeo,* 685 F.2d 24 (2nd Cir.1982) *Taddeo* examined Chapter 11 in general and § 1124(2) in particular. It concluded that if business debtors may cure, then in light of Chapter 11's more liberal rehabilitative intent, that right must have been granted to Chapter 13 debtors as well. *Taddeo,* 685 F.2d 24, 29 (2d Cir.1982). *See also In re Ivory,* 32 B.R. 788 (Bankr.D.Ore. 1983); and *Thompson v. Great Lakes Federal Savings and Loan Association,* 17 B.R. 748, 753 (Bankr.W.D.Mich.1982).

The court in *Ivory, supra,* stated:

The lack of limitations in § 1322(b)(5) has been interpreted by some courts as compelling a restrictive reading of the statute. These courts reason that express authority is required to negate the application of state law and void state court judgments. However, the general rule applicable to conflicts between state and federal law is that federal law preempts state law to the extent there is conflict. In addition, it is more common for the drafters of statutes to list any exceptions or limitations which they intend to apply to a given provision.

Although not determinative, some sections of the code expressly refer to state law when the intent is to make state law applicable. *See e.g.,* 11 U.S.C. § 522(b)(2); 11 U.S.C. § 552(b). No such reference is made in § 1322(b)(5). Also, it is clear that the voiding of state court judgments is not taboo under the Code. *See e.g.,* 11 U.S.C. § 522(f); 11 U.S.C. § 547(b).

Given the overriding rehabilitative purpose of chapter 13 and the literal language of § 1322(b)(5) which grants the debtor a nearly absolute right to cure a default, the arguments of these courts must fall.

*In re Ivory,* 32 B.R. 788, 792 (Bankr.D.Ore. 1983). Thus, if Illinois were a title theory state, there would result a conflict between Illinois and federal law.

Federal courts, however, are bound by a state's construction of its own laws, *Herb v. Pitcairn*, 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1945), and should if possible decide cases in ways that avoid constitutional questions, *Ashwander v. TVA*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936). Therefore, to avoid a constitutional question, under the Supremacy Cause of Article VI, this Court must accept the Illinois Supreme Court's view that Illinois is a lien theory state. Consequently, the premise of the Mortgagee's motion that the mortgage was no longer in existence following entry of the state court judgment must be rejected.

### CONCLUSION

A Chapter 13 debtor may by plan cure arrearages to an Illinois mortgage and de-accelerate the mortgage payments pursuant to 11 U.S.C. § 1322(b)(5) even after foreclosure judgment, provided that those payments were not originally due prior to the Chapter 13 filing and no foreclosure sale of the property has occurred. In the instant case, Debtors' Chapter 13 petition was filed prior to the scheduled foreclosure sale, and the payments sought were due only through acceleration and judgment, not under the original payment schedule and note. Debtors' proposal to cure pre-petition arrearages through the plan within 31 months and to maintain current payments outside the plan, along with the small equity of Debtors in their property, provides adequate protection. Mortgagee's present motion to modify stay must therefore be denied. Should Debtors fail to make plan payments on current mortgage payments, this motion may of course be renewed. The plan payments due the Debtors include those payments heretofore tendered to mortgagee and refused and then escrowed pending this decision, as well as those payments to become due in the future.

IT IS THEREFORE ORDERED that the Mortgagee's Motion to Modify the Automatic Stay is denied.