**In re Wayne D. and Annie M. THOMPSON, Debtors–Appellees.**

**JIM WALTER HOMES, INC., Creditor–Appellant,**

v.

**Ann SPEARS, Trustee–Appellee.**

No. 89–6016.

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1990.

Lawrence A.G. Johnson, Tulsa, Okl., for creditor-appellant.

James A. Conrady of James A. Conrady & Associates, Inc., Okmulgee, Okl., for debtors-appellees.

Before LOGAN, SEYMOUR, and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Jim Walter Homes, Inc. (Walter Homes) appeals from the district court's order affirming the bankruptcy court's denial of its motion to lift the automatic stay imposed by 11 U.S.C. § 362. Walter Homes seeks to foreclose the mortgage it holds on the debtors' principal residence and complete sale of the property.[1] This appeal raises the issue of the scope of the debtors' right to cure mortgage defaults under 11 U.S.C. § 1322(b).[2]

After Wayne and Annie Thompson (debtors) defaulted, Walter Homes filed an action in an Oklahoma state court to foreclose the mortgage and received a fore-

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. In view of our disposition of the appeal, we need not address the other issue raised by debtors.

closure judgment and an order of sale. The foreclosure sale was scheduled for November 13, 1986. On November 10, 1986, however, debtors filed a bankruptcy petition under chapter 13 of the Bankruptcy Code, thereby staying the foreclosure sale under the automatic stay of 11 U.S.C. § 362.

█ In the bankruptcy court, Walter Homes moved for relief from the stay in order to proceed with the foreclosure sale. The bankruptcy court denied this motion and affirmed debtors' plan of reorganization, which provided for cure of the default on the Walter Homes mortgage debt and reinstatement of the original payment schedule pursuant to 11 U.S.C. § 1322(b)(3) & (5). Walter Homes appealed to the district court, which affirmed. It now appeals to this court. Because the relevant facts are undisputed and we consider only legal issues, our review is plenary. *First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 679 (10th Cir.1987).

Walter Homes contends that because debtors filed their bankruptcy petition after the Oklahoma foreclosure judgment, they no longer had a right to invoke the chapter 13 cure provisions. We disagree. Section 1322(b) provides a right to cure any default, but provides no express time limitation for the exercise of this right.[3] After a mortgagor's default, the mortgagee must initiate an often long and cumbersome mortgage foreclosure process in order to have its collateral applied toward the mortgage debt. Thus we must consider at what point during this state mortgage foreclosure process the federal bankruptcy right to cure terminates. As a practical matter, this determines the deadline by which debtors must file a bankruptcy petition in order to avail themselves of the bankruptcy cure provisions.

█ The courts have struggled with this problem and have adopted various approaches. *See generally Federal Land Bank v. Glenn (In re Glenn)*, 760 F.2d 1428, 1432 (6th Cir.) (summarizing the various approaches), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); Annotation, *Right of Debtor to "De–Acceleration" of Residential Mortgage Indebtedness Under Chapter 13 of Bankruptcy Code of 1978 (11 U.S.C. § 1322(b))*, 67 A.L. R.Fed. 217 (1984 & Supp.1989). Even so, all circuits that have addressed the issue have agreed that contractual acceleration of mortgage debt upon default does not end the debtor's right to cure the mortgage default in bankruptcy by paying the amount of the original default, rather than the entire accelerated debt. *See In re Roach*, 824 F.2d 1370, 1374–77 (3d Cir. 1987); *Downey Sav. & Loan Assoc. v. Metz (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir. 1987); *Foster Mortgage Corp. v. Terry (In re Terry)*, 780 F.2d 894, 896 (11th Cir.1986); *Glenn*, 760 F.2d at 1431–36; *In re Clark*, 738 F.2d 869, 872 (7th Cir.1984); *Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236, 241–42 (5th Cir.1984) (en banc), *vacating* 718 F.2d 694 (5th Cir.1983) (panel); *Di Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 26–27 (2d Cir.1982); *In re Nelson*, 59 B.R. 417, 419 (9th Cir. BAP 1985).[4] Beyond this point, however, there is little agreement between the circuits on when the right to cure ends.

---

**3.** 11 U.S.C. § 1322(b), in relevant part, provides: "[T]he plan may—

    ....

    (3) provide for the curing or waiving of any default;

    ....

    (5) ... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due...."

Chapters 11 and 12 also give debtors a right to cure defaults through reorganization plans. 11 U.S.C. §§ 1123(a)(5)(G), 1222(b)(3) & (5).

**4.** Section 1322(b)(2) prohibits *modification* of security interests in a mortgage on real estate that constitutes debtors' personal residence, but § 1322(b)(3) and (5) permit *curing* of any default. All of the cases above cited agree that if a residential mortgage is in default, triggering contractual acceleration of the mortgage debt, a chapter 13 plan to "deaccelerate" by paying the amount of the original default rather than the entire accelerated debt, is a permissible cure, not a prohibited modification.

The Sixth Circuit's approach in *Glenn*, 760 F.2d at 1435–36, was to draw a bright line cutoff, as a matter of federal law, at the date of sale of the property under state foreclosure proceedings. The Third and Seventh Circuits, *Roach*, 824 F.2d at 1377–79, and *Clark*, 738 F.2d at 871, make the cutoff date depend upon the court's interpretation of the effects of the particular state law. Of course, if a mechanical application of state law were to be used in all respects, the right to cure would end at the time the mortgage debt is accelerated, a result which all circuits have disapproved as conflicting with 11 U.S.C. § 1322(b).

The courts that purport merely to apply state law have themselves had difficulty fitting state mortgage and foreclosure concepts to the bankruptcy power to cure. For example, the *Roach* court thought that the right to cure should end on the date of the judgment of foreclosure because "even if a mortgage survives the entry of judgment in New Jersey, the mortgagee possesses independent rights by virtue of its judgment." 824 F.2d at 1378. The *Clark* court, applying Wisconsin law, permitted cure beyond the foreclosure judgment date, because "[n]either equitable nor legal title passes until the foreclosure sale is held." 738 F.2d at 871. In *Justice v. Valley Nat'l Bank*, 849 F.2d 1078 (8th Cir.1988), interpreting analogous provisions in chapter 12 and purporting to apply South Dakota law, the Eighth Circuit allowed cure only up until sale under the foreclosure judgment, not during a longer redemption period during which the mortgagor retained legal title, because it thought Congress intended to allow debtors to cure only until "[e]xtinguishment of the mortgage contract [which] works a substantial change in the relationship of the parties." *Id.* at 1084–85 & n. 6. Approaching the problem from a purely state law point of view, therefore, has yielded several distinctly different cutoff events. In fact, it is often hard to determine exactly which state law event these courts consider to be controlling.

The "state law" courts find themselves bogged down in formalistic notions of title and merger which survive more as a matter of history than as a matter of practical significance. *See generally* G. Nelson & D. Whitman, *Real Estate Finance Law* §§ 1.1–1.5, 4.1–4.3, 6.15–6.17 (2d ed. 1985 & Supp.1989) [hereinafter *Real Estate Finance Law*]. This is illustrated by decisions attempting to apply the Seventh Circuit's *Clark* holding that transfer of title determines the cutoff date for the bankruptcy cure provisions. Federal courts applying Illinois law have not been able to agree on when the mortgagor loses title. *In re Schnupp*, 64 B.R. 763, 765–66 (Bankr.N.D.Ill.1986), held that title passes at the end of the statutory redemption period, in spite of at least three prior cases holding that title passes at the date of the foreclosure judgment. *Goldberg v. Tynan (In re Tynan)*, 773 F.2d 177, 178 (7th Cir. 1985); *First Fin. Sav. & Loan Ass'n v. Winkler*, 29 B.R. 771, 773 (N.D.Ill.1983); *In re Jenkins*, 14 B.R. 748, 749–50 (Bankr. N.D.Ill.1981).[5]

A more useful starting point would seem to be the concept of property of the bankruptcy estate. 11 U.S.C. § 541. In the context of property of the estate, the current Bankruptcy Code rejected the requirement of the former act that property be transferrable or reachable by creditors under state law in order for it to pass into the estate. These notions were overly formalistic and resulted in arbitrary line drawing. The Bankruptcy Code, therefore, settled on an expanded concept encompassing any interest under state law, legal or equitable. 4 *Collier on Bankruptcy* ¶ 541.02[1] (L. King 15th ed. 1989). At the very least, a mortgage debtor must have some legal or equitable interest in property which enters the bankruptcy estate if he hopes to retain it through the bankruptcy cure provisions. *See Clark*, 738 F.2d at 871; *In re Ivory*, 32 B.R. 788, 791 (Bankr.D.Or.1983). No court has held that debtors can use the bankruptcy cure provisions to recover property in which they no longer have any interest under state law.

---

5. Illinois' new mortgage foreclosure statute may have removed the ambiguity. *See Federal Nat'l*

*Mortgage Assoc. v. Josephs (In re Josephs)*, 93 B.R. 151, 153–55 (N.D.Ill.1988).

Somewhere on the continuum of the mortgagor's interests under state foreclosure law we must draw a line beyond which there can be no cure of default. We hold that this issue is as much one of federal law, the proper construction of 11 U.S.C. § 1322(b), as is the determination that this section gives the debtor the right to reverse contractual acceleration of a mortgage in default. Our problem is that we have little help from the words of the statute or its legislative history, so we must try to reconcile the policies of § 1322(b) and state mortgage foreclosure law. Of all the various incidents of property ownership the mortgagor enjoys under state law, the most significant in considering the scope of the right to avoid foreclosure and retain mortgaged property through bankruptcy cure would seem to be redemption rights—the right to avoid foreclosure and retain mortgaged property by paying a specified sum of money.

■ All states apparently permit redemption of mortgaged property, not simply until the date of the foreclosure judgment, but until a foreclosure sale. *Real Estate Finance Law* § 7.1, at 478. Oklahoma is no exception. *See Lincoln Mortgage Investors v. Cook,* 659 P.2d 925, 928 (Okla.1982); *In re Snow,* 94 B.R. 198, 199 (Bankr.N.D.Okla.1988). About half of the states go beyond that, to allow a statutory period of redemption after sale. *Real Estate Finance Law* § 7.1, at 479. The concept of property of the bankruptcy estate is broad enough to include statutory or equitable rights of redemption. 4 *Collier on Bankruptcy* ¶ 541.07[3].

After default and acceleration and until the foreclosure sale, the debtors' position essentially remains the same—they can retain the mortgaged property only through payment to the mortgagee of the full amount of the mortgage debt. Since the practical nature of the relationship between mortgagor and mortgagee under state law is unchanged over this period, the right to effect a federal bankruptcy cure should also be available over this entire period. *Accord Glenn,* 760 F.2d at 1435–36. A foreclosure sale, however, may introduce another party to the relationship—a good faith purchaser. We hesitate to further cloud the interests and expectations of a third-party purchaser through an expansive right of bankruptcy cure. *See id.*[6] Moreover, statutory redemption has differing purposes than equitable redemption. The mortgagor's equitable period of redemption before sale exists solely to provide the debtor adequate time to try to refinance the property, *Real Estate Finance Law* § 1.3, which appears to be the same goal as the bankruptcy right to cure. While an opportunity to refinance is also one of the purposes of statutory redemption, the principal objective of statutory redemption is to assure that the foreclosure sale brings a fair price. *Id.* § 1.4, at 10 & § 8.4, at 618. Purchase by an independent third party at a foreclosure sale raises enough additional concerns to justify ending the right to cure in bankruptcy at that point.

If a state allows mortgagors the right to redeem until a foreclosure sale, we do not consider it trampling upon state law to allow the cure provisions of § 1322(b) to extend to the date of the foreclosure sale. The policy at issue is how much time debtors should be given to attempt to save their

---

6. We do not have before us and do not now decide whether the right to cure should continue during a state's extended statutory redemption period when the *mortgagee* purchases at the foreclosure sale. Often the mortgagee will purchase the property by bidding in the amount of the mortgage debt. *See Real Estate Finance Law* § 1.4, at 10 & § 8.8, at 627. In such a case, the mortgagor-mortgagee relationship is essentially unchanged by the foreclosure sale, and an argument can be made that the right of bankruptcy cure should last until the end of any statutory redemption period state law would allow. *See id.* § 8.15, at 656–57; *cf. Tynan,* 773 F.2d at 178 n. 2 (distinguishing cases allowing cure after foreclosure sale on basis that mortgagee was purchaser). Of course, filing of a bankruptcy petition after the foreclosure sale but before the end of a statutory redemption period would raise the issue, which this circuit also has not addressed, whether a bankruptcy filing tolls the running of a statutory redemption period. *See, e.g., Roach,* 824 F.2d at 1372 n. 1; *Tynan,* 773 F.2d at 179–80; *Glenn,* 760 F.2d at 1436–41; *Johnson v. First Nat'l Bank,* 719 F.2d 270, 276–78 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

property. State law has already addressed this issue in the form of redemption rights. The right to cure in bankruptcy should resemble its state law analogue, but should not be stifled by archaic property and mortgage law concepts. In this case, because the debtors filed their chapter 13 petition during the equitable period of redemption before foreclosure sale, they had a right to cure the default on their home mortgage through their chapter 13 plan.

AFFIRMED.

Each side to bear its own costs and fees.

BALDOCK, Circuit Judge, concurring in the judgment only.

At issue in this case is whether debtors in a chapter thirteen bankruptcy may cure a default of a residential mortgage under 11 U.S.C. § 1322(b) following an Oklahoma State court's entry of a foreclosure judgment and order of sale, but prior to the actual sale of the property.[1] Purporting to interpret § 1322(b), the court holds that the right to cure a default of a residential mortgage extends through the equitable period of redemption until the foreclosure sale. Yet the court acknowledges that neither the statute nor its legislative history places any time limitation on the exercise of this right. What the court in truth does is assume a legislative role based on what it perceives as the demands of equity. While the court's rationale for its holding may be the reason why Congress should amend § 1322(b) to include a time limitation on the right to cure, such rationale is not the reason for this court to do so. The duty of reconciling the adverse views of mortgage lenders and borrowers is not judicial; rather, the Constitution vests Congress with the duty of establishing property rights in bankruptcy proceedings. *See generally In re Glenn*, 760 F.2d 1428,

1433–34 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985) (discussing policy considerations behind § 1322(b)). As Chief Justice Marshall recognized long ago, until Congress chooses to establish uniform bankruptcy laws, state law controls. *Sturges v. Crowninshield,* 17 U.S. (4 Wheat.) 122, 191–208, 4 L.Ed. 529 (1819).

Article I, § 8 of the Constitution empowers Congress to establish uniform bankruptcy laws. This provision undoubtedly authorizes Congress to promulgate a federal statute delineating a time limitation on the right to cure a defaulted residential mortgage under § 1322(b). But Congress has chosen not to exercise its power in this regard. Instead, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). "[S]tate laws are thus suspended only to the extent of actual conflict with the system provided by the Bankruptcy [Code]...." *Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918). In the absence of an express conflict between state and federal bankruptcy law or a federal interest which requires state law to give way, the law of the state where the property is located controls questions of property rights. *Butner,* 440 U.S. at 55, 99 S.Ct. at 918. Accordingly, because no conflict exists between state and federal law on the issue of *when* a debtor may cure a default on a residential mortgage in a chapter thirteen proceeding, the proper analysis must focus on any federal interest likely to be infringed due to the application of state law.

Addressing the affect of debt acceleration on the right to cure under § 1322(b),

---

1. The mortgagee, Walter Homes, moved the bankruptcy court to lift the automatic stay imposed by 11 U.S.C. § 362 in order to execute its foreclosure judgment and complete the sale. Over the mortgagee's objection, the bankruptcy court confirmed the debtors' reorganization plan. According to the bankruptcy court, the mortgagee's objection was defective for want of proper service on the trustee and for the mortgagee's failure to appear at the scheduled confir-

mation hearing. We are unable to address in this appeal the sufficiency of the mortgagee's objection, however, because the debtors have not provided this court with the documentation to support the bankruptcy court's findings. *See* Fed.R.App.P. 10(b)(3). The question of the objection's validity is presumably the "other issue" to which the court refers in footnote two of its opinion.

the court makes the curious statement that "if a mechanical application of state law were to be used in all respects, the right to cure would end at the time the mortgage debt is accelerated." However correct this statement may be, it is simply irrelevant to the proper analysis. The reason that a court is justified in deviating from state law is because of a legitimate and articulated federal policy to the contrary. No court has advocated, nor do I advocate, a "mechanical application" of state law in construing § 1322(b). As explained in the preceding paragraph, any application of state law is impermissible where such law conflicts with a federal statute, its legislative history, or an underlying federal interest.

Virtually every note secured by a mortgage contains an acceleration clause which permits the lender to accelerate payments upon default. But allowing state law to control the effect of an acceleration and its curability in the context of chapter thirteen would render § 1322(b) all but meaningless for residential mortgagors. The Second Circuit ably explained the reason for rejecting a "mechanical application" of state law in *In re Taddeo*, 685 F.2d 24, 29 (2d Cir. 1982):

> [C]reditor's argument reduces in the end to an assertion that because she can accelerate her mortgage under state law, the [debtors] can cure only as provided by state law. This interpretation of § 1322(b) would leave the debtor with fewer rights under the new Bankruptcy Code than under the old Bankruptcy Act of 1898. Defaulting mortgagors would forfeit their right to cure even before the start of foreclosure proceedings, before they hired lawyers and therefore before they knew anything about their rights under Chapter 13. Such a result would render the remedy in § 1322(b) unavailable to all but a select number of debtors. Such a result would be totally at odds with the overriding rehabilitative purpose of Chapter 13.

*Accord Grubbs v. Houston First American Sav. Assoc.*, 730 F.2d 236, 241–42 (5th Cir.1984) (en banc). Chapter thirteen is designed to encourage debtor rehabilitation

rather than liquidation. H.R.Rep. No. 595, 95th Cong., 2d Sess. 116–117 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6076–78. Policy considerations thus dictate that § 1322(b) be construed to permit the curing of a mortgage debt acceleration in order to effectively preserve the relief Congress has provided debtors under chapter thirteen.

The question of how far beyond acceleration the debtor's right to cure extends is more difficult. After acceleration and the commencement of foreclosure proceedings, the necessity of fashioning a federal rule to effectuate the purpose of chapter thirteen is less compelling. By that time, the debtor should have recognized the seriousness of the problem and obtained legal counsel. Allowing state law to control the right to cure beyond this point would not significantly impede a debtor's use of § 1322(b). *See Justice v. Valley Nat'l Bank*, 849 F.2d 1078, 1086 (8th Cir.1988) (interpreting chapter twelve provision, 11 U.S.C. § 1222(b), identical to § 1322(b)). Yet without citing any congressional command or identifying any federal interest, the court today proclaims that the issue of where the right to cure should end "is as much one of federal law, the proper construction of 11 U.S.C. § 1322(b), as the determination that this section gives the debtor the right to reverse contractual acceleration of a mortgage in default."

The Supreme Court has admonished lower federal courts that in bankruptcy law "undefined considerations of equity provide no basis for adoption of a uniform federal rule." *Butner*, 440 U.S. at 56, 99 S.Ct. at 918. Neither does perceived difficulty in applying what the court refers to as "archaic" state property and mortgage law provide such a basis. *See In re Roach*, 824 F.2d 1370, 1379 (3d Cir.1987) (declining to ignore, "in the name of pragmatism," state law in applying § 1322(b) where such an approach was not grounded in the language of the statute). Proper respect for federalism and state sovereignty demands that a federal court override state law only where Congress so intended. "The Bankruptcy Code was written with the expecta-

tion that it would be applied in the context of state law and that federal courts are not licensed to disregard interests created by state law when that course is not clearly required to effectuate federal interests." *Id.* at 1374. A federal court's desire for a uniform rule simplifying application of § 1322(b) is no substitute for proof that the use of state law would undermine a federal statutory scheme. *Justice,* 849 F.2d at 1087.

Oddly enough, the court is willing to discuss the mortgage redemption laws of the fifty states to justify its result, but declines to address the problem of whether the right to cure should continue during a state's statutory redemption period when the mortgagee purchases at the foreclosure sale and the mortgagor-mortgagee relationship is essentially unchanged. Perhaps the court's approach will not be so easy to apply after all. In any event, the law in this instance requires only that the court address the effect of an Oklahoma state court foreclosure judgment and order of sale on the right to cure under § 1322(b). *See In re Clark,* 738 F.2d 869, 874 (7th Cir.1984) (refusing to reach the question of whether the same result obtains in a state in which the effect of a foreclosure judgment is different than Wisconsin).

For these reasons, I cannot join in the court's unwarranted exercise of judicial power.[2]

---

**2.** In Oklahoma, a mortgagor in default is not divested of title to the mortgaged premises until the foreclosure sale is held. *Coursey v. Fairchild,* 436 P.2d 35, 38 (Okla.1967) (mortgagor cannot be divested of title until foreclosure decree and sale); *In re Anderson,* 73 B.R. 993, 996 (Bankr.W.D.Okla.1987) (plan proposing to cure mortgage default confirmed notwithstanding entry of foreclosure judgment prior to bank-

ruptcy). Consequently, I believe the district court acted quite properly in affirming the bankruptcy court's confirmation of the debtors' plan. Because the sale of the mortgaged premises had not yet occurred at the time of the filing of the bankruptcy petition, title remained vested in the debtors and their contractual relationship with the mortgagee remained intact.