**In re Annie Pearl JOSEPHS, Debtor.**

**No. 88 B 2095.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

April 21, 1988.

Rodney Hughes Brooks, Chicago, Ill., for debtor.

Richard L. Hirsch, Bashaw & Assoc., Hinsdale, Ill., for Federal Nat. Mortg. Assoc.

## MEMORANDUM OPINION AND ORDER

EUGENE R. WEDOFF, Bankruptcy Judge.

This chapter 13 case is before the court on a motion for modification of the automatic stay. The movant, Federal National Mortgage Association ("FNMA"), holds a first mortgage on the debtor's residence, and, having initiated foreclosure proceedings in an Illinois state court before this bankruptcy case was filed, now seeks to conclude the foreclosure. The debtor, Annie Pearl Josephs ("Josephs"), opposes FNMA's motion on the basis of a chapter 13 plan through which she proposes to pay the entire amount owing under her mortgage in forty-eight monthly installments. FNMA's motion thus raises the often-litigated question of the interplay between state mortgage foreclosure law and chapter 13 of the Bankruptcy Code. See *In re Roach,* 824 F.2d 1370 (3d Cir.1987), for citation of the major decisions. In the present case, the question of mortgage foreclosure in bankruptcy must be addressed, for the first time, in the context of the new Illinois Mortgage Foreclosure Law, Ill.Rev.Stat. ch. 110, ¶¶ 15–1101 *et seq.* (1987 Supp.) ("the IMFL"), which became effective on July 1, 1987.

**Factual background.** The facts relevant to FNMA's motion are uncomplicated and undisputed. In July, 1972, Josephs purchased a home in Chicago and executed a mortgage on the home, to secure a note in

the amount of $14,800. The note and mortgage were later assigned to FNMA. As of August 21, 1987, Josephs was in default on her mortgage, and FNMA filed a mortgage foreclosure action in the Circuit Court of Cook County, under the provisions of the IMFL. Josephs was personally served with the complaint for foreclosure and entered an appearance. On December 18, 1987, the circuit court entered a Judgment for Foreclosure and Sale, finding that Josephs was indebted to FNMA in the amount of $12,363.61. The judgment ordered a sale of Josephs' home to satisfy this indebtedness, unless Josephs redeemed the home by paying the entire amount of the judgment on or before March 30, 1988. On February 11, 1988, after entry of the judgment of foreclosure, but before any sale pursuant to the judgment, Josephs filed her chapter 13 petition and plan.

## DISCUSSION

**A. The applicability of the automatic stay.** The first question raised by FNMA's motion is whether, in the context of the foreclosure proceedings that have taken place in the present case, there is any applicability of the automatic stay provided for in Section 362(a) of the Bankruptcy Code (the "Code," all citations to which are from Title 11 of the United States Code). FNMA cites *In re Tynan*, 773 F.2d 177 (7th Cir.1985), for the proposition that, when the mortgagor's interest in property has been reduced to a right of redemption, the automatic stay does not prevent a foreclosure of the property from going forward. To understand this argument it is necessary to review the former mortgage foreclosure law of Illinois, under which the *Tynan* case was decided.

Under the former law, the foreclosure process had three major events. The first was the filing and service of a complaint seeking foreclosure. Ill.Rev.Stat. ch. 110, ¶¶ 15–108 through 15–117 (1985). The second was entry of a judgment of foreclosure, which determined that the mortgagor was in default, assessed the amounts due to the mortgagee, and ordered a sale of the mortgaged property to pay those amounts. *See* Ill.Rev.Stat. ch. 110, ¶¶ 15–111 and 15–201 (1985). The third event was the foreclosure sale itself. Under the former law, the purchaser at such a sale received, instead of a deed, a certificate of sale describing the property sold and specifying a date on which the purchaser would be entitled to a deed if the property was not redeemed. Ill.Rev.Stat. ch. 110, ¶ 12–119 (1985). The mortgagor, in turn, was allowed six months after the sale to redeem the mortgaged property by paying to the purchaser the sum of money for which the property was sold; plus interest. Ill.Rev.Stat. ch. 110, ¶ 12–128 (1985). If the six-month period passed without redemption, the purchaser was entitled to a deed for the property, executed by the sheriff or other officer who conducted the sale. Ill. Rev.Stat. ch. 110, ¶ 12–145 (1985).

In *Tynan*, two mortgagors filed a chapter 13 petition after a foreclosure sale of their home had been held, but before the six-month redemption period had concluded. The Court in *Tynan* thus had to determine whether the automatic stay applied to prevent the purchaser at the foreclosure sale from receiving his deed at the end of the six-month period. The court held that the stay did not have this effect, citing several opinions in support of its holding, principally *Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 278 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

The cases cited by *Tynan* reached their results by analyzing the language of Section 362(a). As provided by this section, the automatic stay becomes effective with the filing of a bankruptcy petition, and, among other things, prohibits the "continuation ... of a judicial, administrative, or other action or proceeding against the debtor" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate [or to] enforce any lien against property of the estate." Code, § 362(a)(1), (3), (4). The cases hold that the running of a statutory redemption period is not an "action or proceeding" or an "act" stayed by Section 362(a). *Johnson*, 719 F.2d at 276 ("Congress intended § 362(a) to

prohibit only certain types of *affirmative actions ...*"); *In re Petersen,* 42 B.R. 39, 40 (Bankr.D.Or.1984) ("Section 362 stays only 'acts' or 'proceedings' of non-debtors. What the debtor needs to do to reacquire the property is irrelevant to this analysis."). A similar result was suggested in *First Financial Savings & Loan Association v. Winkler,* 29 B.R. 771, 773 (N.D.Ill. 1983) (footnote omitted):

> It certainly stretches the language to regard the automatic ripening of the Certificate of Sale into a sheriff's deed as a proceeding or act against the debtor or his "property" (which, once the Certificate had issued, was really only the right of redemption). After all the judgment and foreclosure sale are really the final "proceedings" in the foreclosure action itself.

Like *Tynan* itself, *Winkler* was decided under the formerly applicable Illinois foreclosure law. Under the new IMFL, the nature of a mortgagor's right of redemption is different from the right considered in *Tynan,* and the impact of the automatic stay in the present case is also different. Under the IMFL, a mortgagor can redeem the mortgaged property, not by paying the amount of the successful bid in a foreclosure sale, but by paying the amount of the judgment, together with the expenses of the mortgagee. IMFL § 15–1603(d). More significantly, under the IMFL, the period of redemption begins immediately after entry of a judgment of foreclosure, and it concludes before the foreclosure sale takes place. IMFL §§ 15–1504(e)(5), (6) and 15–1506(e). Thus, although Josephs filed her bankruptcy petition before a foreclosure sale was held, her right of redemption under the IMFL was nevertheless running, and would have terminated on March 30, 1988.[1]

Under *Tynan* and the authorities it cites, the automatic stay could not extend Josephs' right to redeem. As argued by FMNA, the only extension of the redemption period available to Josephs, under the Bankruptcy Code, is the extension provided by Section 108(b). Applied to the present case, Section 108(b) would have extended Josephs' right to redeem only to April 11, 1988, 60 days after the filing of her petition. As of the date of this opinion, Josephs' right to redeem under the IMFL has terminated.

█ This result, however, does not mean that FNMA is free to continue with its foreclosure. *Tynan* holds that the passing of a period of redemption is not affected by the automatic stay; *Tynan* does not hold that, during a period of redemption, the automatic stay cannot apply to some other event. In the present case, in order for the foreclosure of Josephs' home to go forward, a foreclosure sale would have to be conducted. As noted in *Winkler,* 29 B.R. at 773, a foreclosure sale is one of the principal "proceedings" in the foreclosure process; Section 362(a)(1) stays proceedings against the debtor. A foreclosure sale is also an "act," taken by non-debtors, to enforce a lien against property of the debtor's estate, and such "acts" are also stayed, by Section 362(a)(4).[2] Nothing in the *Tynan* decision, or in any of the cases it cites, would negate the plain application of the automatic stay to a foreclosure sale in the present case. Thus, unless and until it is modified, the automatic stay does apply in this case to prevent FNMA from continuing with its foreclosure action against Josephs.[3]

---

1. The period of redemption terminates either three months from the entry of judgment, or, if later (as it was in this case), seven months from the date that the last mortgagor was served. IMFL § 15–1603(b). The last mortgagor in this case was served on August 29, 1987.

2. Under the IMFL a mortgagor retains title to the mortgaged property, and (ordinarily) retains the right to possess the property, until after a foreclosure sale. IMFL §§ 15–1506(i) and 15–1701 (see p. 505, below). In the present case,

Josephs' title and possessory rights passed to her estate, pursuant to Section 541(a). *See In re Clark,* 738 F.2d 869, 871 (7th Cir.1984) (property interests of Wisconsin mortgagors survived entry of default judgment and became part of the estate in bankruptcy).

3. However, because the period of redemption has expired, FNMA would be entitled to begin the sale process promptly if this case were dismissed.

**B. Cause for modification of the automatic stay.** Because the automatic stay is applicable in this case, a second question must be addressed in order to decide FNMA's pending motion: that is, whether FNMA has shown grounds for modifying the stay, as specified in Section 362(d) of the Code. FNMA has made no assertion that Josephs lacks equity in her home, which might give ground for relief under Section 362(d)(2). Rather, FNMA's argument for modification appears to be based on Section 362(d)(1), which allows modification "for cause, including the lack of adequate protection of an interest in property." FNMA argues, in effect, that it now has a property interest in the immediate payment of the full amount of its judgment of foreclosure. If this were the situation, Josephs' plan would not adequately protect FNMA's interest, since it makes no provision for immediate payment. *Cf. First Financial Savings & Loan Association v. Winkler*, 29 B.R. 771, 776 (N.D.Ill.1983) (a foreclosure purchaser's interest in the receipt of a deed or timely payment is not adequately protected by a chapter 13 plan calling for cure of mortgage default and reinstatement of regular mortgage payments).

Because Josephs' period of redemption has expired, FNMA does have a right, under the IMFL, to immediate payment of its judgment, a right enforceable at a foreclosure sale. However, Josephs argues that the IMFL, in this respect, is superceded by Section 1322(b)(5) of the Bankruptcy Code. This section permits a chapter 13 debtor to propose a plan that "provide[s] for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due." [4] Josephs asserts that her plan complies with this provision by proposing payments, during the forty-eight months of the plan, sufficient not only to maintain current mortgage payments and cure the default that

existed before she filed, but also to pay the entire mortgage balance. Thus, the ultimate question for decision here is whether the cure of a mortgage default, pursuant to Section 1322(b)(5) of the Code, may properly be proposed in a chapter 13 plan after the mortgaged property has been subject to a judgment of foreclosure under the IMFL.

Because the IMFL has not previously been considered in this context, there is no completely controlling precedent. However, the Seventh Circuit Court of Appeals ruled on the question of the cutoff point for a chapter 13 cure both under Wisconsin foreclosure law (*In re Clark*, 738 F.2d 869 (7th Cir.1984)) and under the former foreclosure law of Illinois (*In re Tynan*, 773 F.2d 177 (7th Cir.1985)). These decisions provide the analytical basis for the ruling in the present case.

*Clark* was the first case decided. There, two mortgagors filed a chapter 13 case after a Wisconsin judgment of foreclosure had been entered against them, but before a sale of the mortgaged property had been held. The mortgagors proposed a chapter 13 plan effecting a cure of the default in their mortgage, and the bankruptcy court confirmed the plan. The mortgagee appealed, and the district court reversed, holding that mortgagors "are not entitled under chapter 13 to cure their defaults and restore their mortgage payments once a judgment of foreclosure is entered against them." 738 F.2d at 871. The Seventh Circuit, in turn, reversed the district court. It held that the mortgagors were entitled to cure their default, despite the entry of the judgment of foreclosure, because of the small impact that a Wisconsin judgment of foreclosure had on the relationship between the mortgagor and mortgagee:

> Despite the judgment of foreclosure, the [mortgagors] still had an interest in the property at the time they filed their petition in bankruptcy, such that the property was part of the estate under 11 U.S.C. §§ 541 and 1307. Under Wiscon-

---

**4.** Under Josephs' mortgage the last payment was originally due on September 1, 1997, and acceleration by the mortgage does not eliminate the applicability of Section 1322(b). See n. 5, below.

sin law, a mortgagee has only a lien on the mortgaged property even after a judgment of foreclosure is entered. Neither equitable nor legal title passes until the foreclosure sale is held. A judgment of foreclosure "does little more than determine that the mortgagor is in default, the amount of principal and interest unpaid, the amounts due to plaintiff mortgagee for taxes, etc.... The judgment does not destroy the lien of mortgage but rather judicially determines the amount thereof." *Marshall & Ilsley Bank v. Greene,* 227 Wis. 155, 164, 278 N.W. 425, 429 (1938).

738 F.2d at 871. The court explained, in a footnote, that its reasoning would not necessarily extend to other mortgage foreclosure laws, drawing a contrast between Wisconsin and "states in which the mortgage is deemed 'merged' with the judgment, effectively transferring title to the mortgagee." 738 F.2d at 871 n. 3.

Finally, the court summarized its holding at the conclusion of its decision:

> [I]n Wisconsin, a judgment of foreclosure does nothing but judicially confirm the acceleration. Though we do not reach the question of whether the same result obtains in a state in which the effect of a judgment of foreclosure is different, in Wisconsin such a judgment adds nothing of consequence as far as § 1322(b) is concerned.

738 F.2d at 874.

The Seventh Circuit's other decision, *In re Tynan,* was a case in which chapter 13 debtors proposed to cure an Illinois mortgage default. Unlike the debtors in *Clark,* however, they filed their bankruptcy petition not only after a judgment of foreclosure, but also after completion of a foreclosure sale, under the former mortgage foreclosure law of Illinois. The Seventh Circuit held that, at this point in the foreclosure process, a cure of the mortgage could not be effected through a chapter 13 plan, since "there was no default to cure after the judgment of foreclosure was entered." 773 F.2d at 178, citing *First Financial Savings & Loan Association v. Winkler,* 29 B.R. 771, 773 (N.D.Ill.1983).

However, the court also stated, as the reason why there was no mortgage default to cure, that the purchaser at the foreclosure sale "satisfied the debt which the [mortgagors] owed to the bank that had made the mortgage loan upon the property." 773 F.2d at 178. Moreover, *Tynan* distinguished *Clark,* not only because it involved Wisconsin law, but also because, in *Clark,* "no foreclosure sale had occurred before the Chapter 13 petition was filed." 773 F.2d at 179 n. 2. Thus it is not clear whether *Tynan* viewed the judgment of foreclosure or the foreclosure sale as the cutoff point of a debtor's option to cure a mortgage default under chapter 13.

However, two points do clearly emerge from *Clark* and *Tynan.* The first is that, in this circuit, the cutoff point for the right to cure a mortgage default under Section 1322(b)(5) varies according to the particular state mortgage law involved; there can be no designation of a cutoff point applicable to all foreclosure proceedings. In this respect, the Seventh Circuit's holdings contrast with the decision of the Sixth Circuit in *In re Glenn,* 760 F.2d 1428, 1435–36 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), which adopts, for all states within that circuit, a rule that Chapter 13 debtors may propose to cure mortgage defaults unless there was a foreclosure sale before they filed their bankruptcy petitions. The second point that emerges from *Clark* and *Tynan* is that a debtor's right to cure a mortgage default under Section 1322(b)(5) is extinguished when the foreclosure process reaches a point at which the pre-foreclosure relationship between the mortgagor and mortgagee has ended, so that it can be said that the mortgagor's title has effectively been transferred and that there is no longer any mortgage to cure.

Applying these principles to the present case requires an analysis of the manner in which the current Illinois foreclosure law, the IMFL, affects a mortgagor's interest in property at each of the major steps in the foreclosure process: (1) filing and service of the foreclosure complaint; (2) entry of the judgment of foreclosure; and (3) the

foreclosure sale and judicial confirmation of that sale.

**1. Filing and service.** As soon as a mortgagee completes service of a foreclosure complaint on the mortgagor there is a significant consequence under the IMFL: the right of the mortgagor to reinstate the mortgage by tendering past due payments and expenses is commenced and a cutoff of that right is set. The right of reinstatement exists for ninety days after service of the complaint on the mortgagor, regardless of whether a judgment is entered during that period. IMFL § 15–1602. Of course, the complaint itself does not effect any substantial change in the position of the mortgagor and mortgagee, since it consists only of allegations of default that may be disproven. There is no question, under the Seventh Circuit's decisions, that a chapter 13 debtor may properly propose to cure a mortgage default pursuant to Section 1322(b) of the Bankruptcy Code at the pre-judgment stage of an Illinois foreclosure.[5]

**2. Judgment of foreclosure.** A judgment of foreclosure under the IMFL has three principal features. First, the judgment determines that the mortgagor is in default and assesses the sums due under the mortgage. IMFL §§ 15–1506(e) (requiring the court hearing the foreclosure to include in the judgment "all rulings of the court entered with respect to each request for relief set forth in the complaint") and 15–1504(e)(1) (interpreting any request for foreclosure to include a request for "an accounting ... of the amounts due and owing"). Second, a judgment of foreclosure under the IMFL declares the last day that the mortgagor can redeem the mortgaged property by payment of the amounts found due. IMFL § 15–1504(e)(2), see n. 1, above. Third, the judgment pro-

vides for sale of the mortgaged property to satisfy the amounts due, in the event that the property has not been redeemed. IMFL § 15–1504(e)(3).

A judgment of foreclosure under the IMFL is thus very similar in function to the Wisconsin judgment of foreclosure described in *Clark*—it determines default, assesses damages, and provides for sale. As with a Wisconsin judgment, the mortgagee is still owed its debt after entry of judgment under the IMFL and judgment under the IMFL does not terminate the mortgagor's legal or equitable title to the mortgaged property. Rather, it creates a lien in favor of the mortgagee in the amount found owing. IMFL § 15–1506(i)(1). This "replacement" lien is substantially the same as the lien that existed before the judgment, fortified only by judicial recognition.[6]

In other important respects, the IMFL judgment also maintains the relationship between mortgagor and mortgagee that existed before judgment. The mortgagor's right to possession after judgment is virtually the same as before judgment (*i.e.*, removal only upon a showing of cause by the mortgagee), with the only difference being that, after judgment, the mortgagee may require the mortgagor to pay the lesser of mortgage interest or fair market rent for the mortgaged property. IMFL § 15–1701(c). Finally, and contrary to the former law, Ill.Rev.Stat. ch. 95, ¶ 57 (1985), the entry of a judgment of foreclosure under the IMFL has no impact on the mortgagor's right, under state law, to reinstate the mortgage. This right is accorded to the mortgagor for a period of ninety days following service of the complaint for foreclosure, and any judgment is subject to this right. IMFL § 15–1602 (see pp. 504–505,

---

**5.** Some decisions, outside of this circuit, have held that once a mortgagee declares an acceleration of the debt secured by the mortgage, cure of default cannot take place under a chapter 13 plan. *See Grubbs v. Houston First American Sav. Ass'n*, 718 F.2d 694 (5th Cir.1983), *rev'd on reh'g en banc*, 730 F.2d 236 (5th Cir.1984); *In re Williams*, 11 B.R. 504 (Bankr.S.D.Tex.1981); *In re LaPaglia*, 8 B.R. 937 (Bankr.E.D.N.Y.1981). These decisions, however, have been generally disapproved. *See Grubbs v. Houston First Amer-*

*ican Sav. Ass'n*, 730 F.2d 236 (5th Cir.1984) (en banc); *In re Taddeo*, 685 F.2d 24 (2d Cir.1982); *In re Schnupp*, 64 B.R. 763 (Bankr.N.D.Ill.1986).

**6.** Regardless of whether the mortgage documents purport to grant the mortgagee an absolute title to the mortgaged property, or only a lien on the property, the IMFL specifies that only a lien is granted. IMFL § 15–1207(c).

above). Thus, a judgment entered less than ninety days after service can be entirely nullified by the mortgagor's tendering of past due mortgage payments and expenses during the ninety day period.

With all of these factors taken into consideration, it cannot be held that a judgment of foreclosure under the IMFL terminates the pre-foreclosure relationship between mortgagor and mortgagee. To be sure, the mortgage can be said to have "merged" into the judgment, since, under the IMFL "the rights in the real estate subject to the judgment of foreclosure ... shall be solely as provided for in the judgment of foreclosure and in this Article [the IMFL]." IMFL § 15–1506(i)(2). However, nearly all of the essential rights of the parties to a mortgage (the rights to payment, possession, and title) are defined by the IMFL, rather than the mortgage documents, both before and after the entry of judgment, and these rights are not substantially altered by the judgment. Because the relationship of mortgagor and mortgagee is not substantially altered by the entry of a judgment of foreclosure under the IMFL, a debtor in chapter 13 retains the option under Section 1322(b)(5) of the Code to propose a cure of a mortgage default after entry of such a judgment.

**3. Sale and confirmation.** If a mortgagor neither reinstates the mortgage nor redeems the mortgaged property within the applicable time limits, the IMFL provides for a sale of the property to satisfy the obligation it secures. IMFL § 15–1507. The most significant change from the former law is that, under the IMFL, this sale does not take place until after the expiration of the mortgagor's right to redeem. Thus, bidders at a foreclosure sale under the IMFL were intended to be assured of prompt possession, and therefore, it was hoped, they would be willing to offer prices

reflecting the market value of the property. Liss, *Introduction to the Proposed Illinois Mortgage Foreclosure Act*, 9 Ill. Fund Concept 13, 14 (1985). In keeping with this intent, the IMFL provides that the court presiding over the foreclosure shall promptly conduct a hearing to determine that the sale was properly conducted, and, unless it finds to the contrary, enter an order confirming the sale and awarding possession to the purchaser. IMFL § 15–1508(b). The order is effective thirty days after entry. *Id.* Upon confirmation, the purchaser at the sale, or the assignee of the purchaser, receives a deed to the property, sufficient to convey title, and this conveyance is a bar of all claims of parties to the foreclosure. IMFL § 15–1509.[7] Thus, at the time of sale under the IMFL, there is a fundamental change in the mortgage relationship. Instead of a situation where the only interested parties are the mortgagor and the mortgagee, the sale introduces a third party—the foreclosure purchaser—with a claim to the property. The intent of the law is that this purchaser should receive possession promptly, and with a high degree of certainty. After the sale, the mortgagor's right to title and possession remain only to allow a court to confirm the propriety of the sale.

■ The foreclosure sale, then, is the point at which the pre-foreclosure relationship of mortgagor and mortgagee is ended, and, pursuant to the holdings of *Clark* and *Tynan*, the point at which the right to cure a mortgage default under Section 1322(b) of the Code is cut off. Because Josephs filed her bankruptcy petition prior to this point, her plan properly proposes a cure of her default to FNMA; FNMA has no interest in immediate payment of the full amount of its judgment of foreclosure; and FNMA's motion to modify the automatic stay, based on the facts presented, must be denied.[8]

---

**7.** The only circumstance in which a successful purchaser might be deprived of title after confirmation is where the purchaser is the mortgagee, and the successful bid is less than the amount owing under the judgment. In this situation, the mortgagor is given the option, for thirty days, of paying the sales price to the

mortgagee, together with any additional costs of the sale, thereupon requiring the mortgagee to reconvey the property. IMFL § 15–1604.

**8.** Of course, this ruling is without prejudice to a renewed motion for modification of the stay in the event that Josephs fails to make required

## ORDER

For the reasons stated above, the motion of Federal National Mortgage Association for modification of the automatic stay is denied.

payments or otherwise leaves FNMA without adequate protection.