**In re Robert L. DANIELS, Jr., Debtor.**

**Bankruptcy No. 87 B 3900.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 9, 1988.

Robert J. Adams, James J. McGraw, Chicago, Ill., for debtor.

Marc C. Scheinbaum, Fisher & Fisher, P.C., Chicago, Ill., for Fleet Mortg. Corp.

Jack McCullough, Chicago, Ill., Trustee.

AMENDED MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTION TO RECEIVE POST JUDGMENT RATE OF INTEREST ON JUDGMENT OF FORECLOSURE

(Corrected and Reissued September 9, 1988)

JACK B. SCHMETTERER, Bankruptcy Judge.

This proceeding is under Chapter 13 of the Bankruptcy Code. It was filed after a

Judgment of Foreclosure and Sale was entered in favor of Fleet Mortgage Corporation ("Fleet") against Robert L. Daniels, Jr. ("Debtor"). Debtor moved for entry of a "Judgment Creditor Order." That proposed Order as drafted would provide for Debtor to pay Fleet over five years the foreclosure judgment with interest to accrue at the Illinois Statutory post-judgment rate of 9% per annum as part of his Plan, plus certain escrow payments. Fleet objected to the proposed Order because it objects to that interest rate. It contends that the mortgage note and contract rate of interest (15½% per annum) should govern and the requested judgment Order should not be entered except at the higher interest rate. Fleet is apparently agreeable to the Plan and Order should the higher rate be offered.

The requested Order essentially seeks approval of part of Debtor's Chapter 13 Plan, and creditor's objection stands as objection to that part of the Plan.

For reasons set forth by Memorandum Opinion on January 21, 1988, Debtor's Motion was denied because the rate offered was found to be improper, and creditor was found to be required to accept a judgment order only if entered at the contract interest rate. Debtor moved for reconsideration. Upon reconsideration and review of applicable authorities and the record of this case, the Court finds that the requested order and Plan modifies Fleet's rights to its security interest in Debtor's sole residence within the meaning of § 1322(b)(2); that no cure and deacceleration of the mortgage is offered under § 1322(b)(5); and therefore the requested order is in violation of § 1322 regardless of the interest rate offered. Only with consent of the affected creditor can a "Judgment Creditor Order" of this nature become part of a Chapter 13 Plan when § 1322(b)(2) applies.

Accordingly, on reconsideration the Debtor's motion is again denied. The case is set for status to determine whether the parties can reach agreement on terms of an order to pay off the Judgment, or whether Debtor will instead seek to cure the arrearage and reinstate the mortgage. The earlier Opinion of January 21, 1988 is withdrawn and the Order of that date will be vacated.

## UNDISPUTED FACTS

On December 27, 1981, Robert Daniels, Jr. ("Debtor") executed a Note in favor of Mortgage Associates, Inc. It was secured by a mortgage on certain residential property that was and is Debtor's only residence. This Note was subsequently assigned to Fleet Mortgage Corporation ("Fleet"), the creditor herein. The balance due was payable in monthly installments with interest at the contract rate of 15½% annually "until paid". However, there is no provision therein specifically providing for that or any specified interest rate to continue to be due after foreclosure judgment. The mortgage is not due to be paid off until January 1, 2012, long after the proposed Chapter 13 Plan will end. (Ex. B.1, Motion to Reconsider.) The Note was given in consideration for a loan upon Debtor's purchase of the mortgaged Illinois property, his present residence which he is not surrendering under the Chapter 13 Plan.

Debtor made the required mortgage payments until June of 1986 and then defaulted on the loan. Thereafter, Fleet sued in our District Court to foreclose the mortgage. That action was brought under the former Illinois Mortgage Foreclosure Act. On February 5, 1987, a Default Order was entered against the mortgagors, and also a Judgment of Foreclosure and Sale. The District Court found that the total Judgment indebtedness amounted to $39,926.60 including principal, interest to that date, attorneys fees, and costs. Debtor claims a value of $46,000 to that home. (Dr. Chapter 13 Petition filed March 13, 1987, real estate schedule.) Debtor therefore claims an equity of about $6,000 in the property.

On March 13, 1987, Debtor filed this proceeding under Chapter 13 of the Bankruptcy Code. Debtor's Plan has not yet been confirmed. Confirmation of the Plan awaits ruling on Debtor's pending motion to pay Fleet's Foreclosure Judgment by a "Judgment Plan" with payments over the five year life of the plan.

In the meantime, Fleet has moved to modify the stay to permit it to proceed with the sale following foreclosure. Fleet has agreed that the stay should remain in effect until the interest issue is decided and Debtor has an opportunity to offer a judgment order that meets Fleet's demands. Therefore the stay has remained in effect by agreement while the parties briefed and the Court decided the issues before it.

## DISCUSSION

■ In an imperfect world it appears inevitable that many debtors will not file for protection in bankruptcy until the eve of disaster. In Chapter 13 cases, that point often comes after the homestead is foreclosed on and judgment is entered, but just prior to foreclosure sale. When that happens prior to sale, Debtor may cure and deaccelerate the mortgage in bankruptcy under 11 U.S.C. § 1322(b)(5), *In re Clark*, 738 F.2d 869 (7th Cir.1984), both under the old Illinois Mortgage Act, *In re Schnupp*, 64 B.R. 763 (Bankr.N.D.Ill.1986); *In re Tukes*, Bankr. No. 86 B 5418 (Bankr.N.D. Ill.1988, J. Ginsberg, unpublished) and also under the new Illinois Mortgage Act, *In re Josephs*, 85 B.R. 500 (Bankr.N.D.Ill., J. Wedoff, 1988).

Had Debtor here simply sought to deaccelerate and cure the mortgage, the question of interest rate would be decided as a cure problem under § 1322(b)(5).

Under § 1322(b), the Chapter 13 Plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

\*    \*    \*    \*    \*    \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Debtor disclaims any wish to "cure" under § 1322(b)(5). Should § 1322 not apply here, the Court would be obliged to consider § 1325(a)(5)(B)(ii) which provides that the court shall confirm a Chapter 13 Plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder.

Analysis of § 1325(a)(5)(B)(ii) would then deal with the interest rate issue.

■ The parties assumed in their briefing that a Judgment Order is permissible in the absence of creditor agreement; they only disputed the applicable interest rate. Therefore this Court did not originally focus on the underlying question of whether any such order can be crammed down in Chapter 13 on a creditor secured by Debtor's only residence that objects to such Order for any reason. In failing to reach that question, the earlier opinion did not address the issue properly.

Under Illinois foreclosure law, Illinois is a "lien" state, not a "title" state. The often loosely described "merger of mortgage into foreclosure judgment" does not pass title or substantially alter creditors' rights. *See Clark, Schnupp, Tukes*, and *Josephs supra*. As this Court and Judge Ginsberg discussed in *Schnupp* and *Tukes* under the former Illinois foreclosure law, following entry of foreclosure judgment the creditor retains its mortgage lien until after foreclosure sale. Judge Wedoff likewise found in *Josephs* under the new Illinois foreclosure law that "it cannot be said that a judgment of foreclosure under the IMFL [new foreclosure law] terminates the

pre-foreclosure relationship between mortgagor and mortgagee." The opinions in those cases are referred to for the rationale thereof.

All those decisions ruled that because the relationship of mortgager and mortgagee is not terminated by foreclosure judgment order, whether under the former or current foreclosure law in Illinois, a Chapter 13 debtor retains the option under § 1322(b)(5) to propose a cure of the mortgage default even after entry of that judgment.

However, that right to cure stems from the continued existence of the mortgage. For reasons discussed in the foregoing cited cases (and the authority cited in those cases), it must be concluded that the creditor here still has a "security interest" in Debtor's home through its original mortgage, not merely through the judgment lien. Its interest is therefore a "lien created by agreement," the definition of "security interest" under § 101(45) and referred to in § 1322(b)(2).

It cannot be doubted, nor has Debtor questioned, that the proposed Judgment Order would modify the rights of Fleet under the mortgage—rights to amounts and timing of payments, interest rate, and foreclosure for nonpayment, to mention the most obvious. While the stay of foreclosure is not a Plan "modification" of creditor rights that by itself is forbidden by § 1322(b)(2), the other modifications are forbidden in the case of Debtor's principal residence.

Where § 1322(b)(2) applies, then we do not reach § 1325(a)(5)(B)(ii). The latter provision applies only if rights of the secured creditors are modified by the plan, but under § 1322(b)(2) such modification is not permitted as to debtor's principal residence. As to such property there may only be cure of arrearage under § 1322(b)(5). *In re Stamper*, 84 B.R. 519, 523 (Bankr.N. D.Ill., J. Ginsberg, 1988).

■ Accordingly, in the absence of creditor agreement Debtor can affect Fleet's mortgage security interest only through cure under § 1322(b)(5). However, there is clearly no request in the Plan or pending Motion to reinstate, deaccelerate, and re-store the mortgage to pre-default conditions. *In re Taddeo*, 685 F.2d 24 (2d Cir. 1982). Indeed, Debtor argues clearly that he does not intend a cure under § 1322(b)(5). Since no cure is proposed and the Judgment Order is barred by § 1322(b)(2), the Debtor's motion must be denied.

Were cure attempted under § 1322(b)(5), or were no cure required and the Court could consider this matter under § 1325(a)(5)(B)(ii), we would analyze the many cases considering appropriate interest rates and their various rationales and often conflicting results. *See, e.g.,* cases cited in earlier opinion, and in *In re Stamper, supra.* In the context of what is presented here, however, no such analysis is appropriate.

Congress has provided a special limitation on the ability of Chapter 13 debtors to modify the rights of secured mortgage creditors as to their homes, but also a special right to cure arrearages in order to save those homes. Congressional intent is quite clear, and debtors must follow the path laid out by statute. Unless they can negotiate creditor agreement to a Judgment Creditor Order of the sort presented here, it may not be "crammed down" without creditor consent in the face of § 1322(b)(2).

Upon reconsideration, Debtor's motion is again denied and the matter is set for status to ascertain whether the parties will reach agreement or Debtor will amend his Plan to seek a cure of arrearages under the mortgage.