**In re Dorothy W. and Johnny L. BEATY, Debtors.**

**Bankruptcy No. 89 B 21283.**

United States Bankruptcy Court, N.D. Illinois, E.D.

June 27, 1990.

Brian C. Pedersen, Robert Adams & Associates, Chicago, Ill., for debtors.

Laura C. Wardinski, Codilis & Associates, Oakbrook Terrace, Ill., for Carteret Savings.

Craig Phelps, Standing Trustee, Chicago, Ill., Chapter 13 Trustee.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtors have filed a plan under Chapter 13 of the United States Bankruptcy Code that would cure a default under their house mortgage and reinstate the original terms of that mortgage. The mortgagee, Carteret Savings Bank, objects to confirmation of that plan and requests relief from the automatic stay on the ground that the Debtors have no rights to cure the mortgage default because this case was not filed until after the judicial sale of the property pursuant to a judgment of foreclosure. The Debtors answer that, although they filed this case after the sale, they may still cure their mortgage default and save their home because that sale was not confirmed before the Chapter 13 filing. This Court holds that the Debtors do not have the power to cure the mortgage default after sale. Therefore, Carteret's objection will be sustained, confirmation of the plan will be denied and the automatic stay will be modified.[1]

## FACTS

The facts in this case are simple and undisputed. In 1987 the Debtors got a $60,450.00 mortgage loan from Evergreen Home Funding Corporation to purchase a house in Dolton, Illinois. Evergreen assigned the mortgage to Carteret. The Debtors evidently were unable to keep up with their mortgage payments and in March, 1989, Carteret filed a foreclosure action in the Circuit Court of Cook County, Illinois. In July, 1989, the Illinois court entered a default judgment of foreclosure in the amount of $69,275.40, and set the period of redemption to end on November 2, 1989. On November 29, 1989, the Debtors not having redeemed the property, the sheriff conducted a sale of the Debtors' home and Carteret was the successful bidder. Carteret then moved for confirmation of the sale by the Illinois court, and that hearing was scheduled for December 20, 1989.

On December 15, 1989, however, the Debtors filed their Chapter 13 petition and plan. The plan provided that the Debtors would cure the default on the mortgage by paying $13,964 over eighteen months. If the plan were confirmed, and the Debtors made all the payments, as well as the regular monthly mortgage payments that come due during the term of the plan, the default would be cured, the mortgage reinstated and the house saved. Unfortunately for the Debtors, however, this Court cannot confirm their plan.

1. This matter is a core proceeding under 28 U.S.C. § 157(b)(2) and this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334.

## DISCUSSION

**A. The Debtors' rights to cure under § 1322(b)(5).**

■ A debtor may cure a default on his mortgage through a Chapter 13 plan pursuant to § 1322(b) of the Bankruptcy Code, 11 U.S.C. § 1322(b):

(b) ... the plan may—

. . . . .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

. . . . .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due; ....

Under this provision, even though a mortgage is in default, the mortgagee has accelerated the maturity date of the loan (meaning that it called the loan and demanded immediate payment of the entire balance) and the debtor has no right under non-bankruptcy law to cure the default, he can do so in a Chapter 13 case. In *In the Matter of Clark*, 738 F.2d 869, 874 (7th Cir.1984), the court concluded that the debtor's right to "cure" under section 1322(b)(5) permits a debtor to "de-accelerate" the payments due under a note secured by a residential property mortgage and reinstate the long term mortgage. The court held that "cure, as used in

§ 1322(b)(2) and (5), [means] to remedy or rectify the default" and "to restore matters to the way they were before the default." *Id.*, at 872.

Moreover, a Chapter 13 debtor's right to cure a default and reinstate a mortgage survives even if a foreclosure judgment was entered before the commencement of the bankruptcy case. *Clark*, 738 F.2d 869, 874 (Wisconsin law); *In re Josephs*, 93 B.R. 151, 155 (N.D.Ill.1988) (following *Clark* and holding, *inter alia*, that Illinois law is substantially similar to Wisconsin law). A judgment of foreclosure does nothing more than judicially confirm the acceleration of the debt. *Clark*, 738 F.2d at 874. More important, even after the judgment of foreclosure is entered, the mortgagee only has a right to be paid the amount of the debt, secured by a lien on the property. The judgment "determines the amount due the mortgagee, and orders sale of the mortgaged property to satisfy the amount due...." *Josephs*, 93 B.R. at 155. These rights—to payment of a specific amount and to have the property sold to make that payment—are the essential rights of a mortgagee before judgment. See, *In re Josephs*, 85 B.R. 500, 505 (Bankr.N.D.Ill. 1988), *aff'd*, 93 B.R. 151 (N.D.Ill.1988) (the "replacement lien [created by a judgment of foreclosure] is substantially the same as the lien that existed before the judgment").[2] Similarly, even after judgment, a debtor may save his property by paying the entire debt.[3] A judgment alone, therefore, does not significantly alter the legal interests of the parties, which is why a debtor may propose a cure under section 1322(b) even after judgment. "[A] judgment adds nothing of consequence as far as § 1322(b) is concerned." *Clark*, 738 F.2d at 874.

Here, however, the question is whether a judicial sale is "of consequence as far as § 1322(b) is concerned." In *In re Tynan*,

---

**2.** Bankruptcy Judge Wedoff's opinion in *Josephs*, 85 B.R. 500, thoroughly analyzes the current Illinois Mortgage Foreclosure Law ("IMFL"), Ill.Rev.Stat., ch. 110, § 15–1101, *et seq.* That analysis will not be repeated here.

**3.** The Court agrees with the Debtors that, at least as a practical matter, a debtor can always satisfy a foreclosure judgment before sale, even

if the period of redemption has run. Since the debtor would get all the proceeds of sale in excess of the judgment plus expenses (IMFL § 15–1512), it would make little sense to conduct a sale if the debtor had the money to pay the judgment. *Cf.*, Ill.Rev.Stat., ch. 110, § 12–183 (providing for release of judgment upon satisfaction).

773 F.2d 177, 179 (7th Cir.1985), the court held that under the former Illinois foreclosure law,[4] the only right that a debtor/mortgagor had in real estate sold at a foreclosure sale was the right of redemption and that the real estate itself did not become part of the debtor's estate. The court reasoned that section 1322(b)(5) was unavailable to the debtor because the purchaser of the mortgaged property satisfied the secured debt; therefore, there was no longer either a mortgage or a default to cure.

The result is the same under current law because the sale substantially changes the rights of both the debtor and the mortgagee. Carteret no longer has merely the right to have the property sold to satisfy its claim. The property has been sold. Now the mortgagee has the right to title and possession of the property itself, (or, if a third party had been the successful bidder, Carteret would be entitled to the proceeds of the sale up to the amount of the debt). These rights may be subject to a condition—the subsequent judicial confirmation of the sale—but they are nevertheless much different than the rights the mortgagee had before sale.

These post-sale rights of the mortgagee are of consequence here because they do not arise from the mortgage, and therefore cannot be affected by any attempted cure of the mortgage. It is the foreclosure sale that terminates the parties' rights under the mortgage. "[T]he interest in the mortgaged real estate of all persons made a party in such foreclosure ... shall be terminated by the judicial sale of the real estate, provided that the sale is confirmed ..." IMFL § 15–1404. At the time of the sale, the purchaser of the mortgaged property receives a certificate of sale. IMFL § 15–1507(e). The holder of the certificate

of sale is entitled to a deed when the sale is confirmed. IMFL § 15–1509(a). The court is required to confirm the foreclosure sale, after notice and a hearing, unless the court finds one of the four grounds listed in IMFL § 15–1508.

The only right a mortgagor has in the mortgaged property after the sale is a limited right to remain in possession of property for thirty days after the confirmation. IMFL § 15–1701(c). The mortgagor's title and right to possession remain only until the court can confirm the sale. *In re Josephs*, 85 B.R. at 506.[5] After the sale, the mortgagor can no longer save the property by paying the judgment because the buyer at the foreclosure sale has rights to title and possession arising from the certificate of sale, not the mortgage or the judgment. There is nothing in the IMFL or any other law that suggests that those rights can be defeated by paying the judgment. And any such construction would be inconsistent with the legislative intent that bidders go to the sale assured that the buyer will receive good title promptly after sale. *See Josephs*, 85 B.R. at 506; *cf.* IMFL § 15–1605 (no equitable right of redemption after sale).

For these reasons, it is too late for the Debtors to cure the default under the mortgage in accordance with section 1322. The parties' rights no longer arise from the mortgage; new rights have arisen. Therefore, the Court will sustain Carteret's objection and deny confirmation of the plan.

### B. Automatic Stay.

██ Even though the Debtors no longer have a substantial interest in the mortgaged property, they still have possessory rights in the property that are protected by the automatic stay. *See In re Maxwell*, 40

---

**4.** The former Illinois law governing foreclosure procedures provided that a purchaser at a foreclosure receive a certificate of sale. The mortgagor then had six months after the sale to redeem the mortgaged property by paying the buyer the amount of the sale price, plus interest. If the mortgagor did not do this, then the purchaser was entitled to a deed to the property. Ill.Rev.Stat., ch. 110, ¶¶ 12–119—145 (1985) (repealed).

**5.** The mortgagor also has a special right to redeem the mortgaged property, if the purchaser was the mortgagee and the sale price was less than the amount specified in the judgment of foreclosure. This special right to redeem ends thirty days after the sale is confirmed. IMFL § 15–1604(a). That section is inapplicable in this case.

B.R. 231, 237 (N.D.Ill.1984) (A debtor-tenant in possession has a slight equitable interest protected by the automatic stay, even where the lease was terminated prior to filing and only a tenancy at sufferance is left).

Carteret's interest as purchaser of the property, however, is not being adequately protected and Carteret has shown cause for relief from the stay under 11 U.S.C. § 362(d). The stay, therefore, should be modified to allow Carteret to proceed with the confirmation of the sale and to thereafter take title and possession. If the Illinois court denies confirmation of the sale, however, Carteret will be prohibited by the stay from conducting another sale. That is, if it turns out that the sale was improper, there is no reason the Debtors should not be able to proceed in this Court as if there had been no sale. But the propriety of the sale is for the state court to decide.

An appropriate order will be entered in accordance with this opinion.