**In re Sheldon Deon BROWN, Debtor.**

**No. 00 B 01266.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 5, 2000.

Nora H. Ramirez, Pierce & Associates, P.C., Chicago, Illinois, for Creditor/Movant.

Thaddeus L. Wilson, Brookins & Wilson, Chicago, Illinois, for Debtor/Respondent.

## MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

■ This Chapter 13 case has come before the court on a motion brought by the seller of real property under an installment contract. The motion seeks relief from the automatic stay in order to allow the seller to pursue eviction of the contract purchaser, the debtor in this case. The principal question raised by the motion is a familiar one in Chapter 13: at what point does a contract "terminate," so that contractual defaults can no longer be cured under a Chapter 13 plan? In the context of an Illinois real estate installment contract, there are conflicting decisions on this question. For the reasons set forth below, this court holds that such a contract does not terminate until it has been established that the debtor has no right under nonbankruptcy law to continue with the contract by paying the amounts in default. Since, at the time of the filing of this bankruptcy case, the right to continue with the contract had not been extinguished, the debtor's contractual defaults may be cured under a Chapter 13 plan, and the seller's motion for relief from the automatic stay is therefore denied.

### Jurisdiction

Federal district courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). However, pursuant to

28 U.S.C. § 157(a), district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference of the pending case. When presiding over a referred case, a bankruptcy judge has jurisdiction, under 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments as to core proceedings within the case. Motions for relief from the automatic stay are core proceedings under 28 U.S.C. § 157(b)(2)(G), and so this court may enter a final order deciding the pending motion.

### Findings of Fact

In September of 1998, Sheldon Deon Brown entered into a contract to purchase a home for $92,500, payable in monthly installments over a period of 30 years. Brown made a downpayment of $4,700 and additional payments under the contract during 1999. However, by the end of 1999, he had defaulted in payments, and Countrywide Home Loans ("Countrywide"), then the holder of the installment contract, began efforts to terminate Brown's rights under the contract. First, on November 3, 1999, Countrywide attempted personal service of a Notice of Intention to Declare a Forfeiture; receiving no response from any occupant, the process server posted the notice at the premises. Next, on December 13, 1999, Countrywide attempted to personally serve Brown with a Declaration of Forfeiture. Again, the process server received no response and so posted the declaration at Brown's home. Finally, on January 11, 2000, Countrywide served a Demand of Immediate Possession of the property, also by posting the document at the residence.

Brown filed a petition for relief under Chapter 13 of the United States Bankruptcy Code (Title 11, U.S.C.) on February 14, 2000 and has remained in possession of the property up to this time. On February 29, 2000, Countrywide filed the pending motion, to which Brown objected. The parties thereafter briefed the legal issues, based on the undisputed facts set forth above.

### Conclusions of Law

■ *Illinois real estate installment contracts.* Real estate installment contracts—or, as they are sometimes called, installment land contracts or contracts for deed—are much like mortgages: the buyer of real property takes possession of the property while making periodic payments of the purchase price. However, real estate installment contracts differ from mortgage transactions in two respects: (1) the seller does not issue a deed to the buyer until all of the required payments have been made, and (2) if there is a default in payments, the seller may obtain a forfeiture, which allows the seller both to retain all of the payments made prior to the forfeiture and to have the purchaser removed from the property, without any foreclosure sale or lengthy judicial process. *See* Lisa A. Danielson, *Installment Land Contracts: The Illinois Experience and the Difficulties of Incremental Judicial Reform,* 1986 U. Ill. L.Rev. 91, 91–92 (1986). These features have made real estate installment contracts a useful method for financing the purchase of a home in situations where the buyer would not qualify for a conventional mortgage. *Id.* However, the very features that make real estate installment contracts attractive to sellers of property create the potential for results that can been seen as inequitable— a buyer who has paid substantial sums under the contract and defaults in a small amount may be ousted from the property, with no opportunity (under the contract) to cure the default or recover any equity. *Id.* at 92, 95.

Illinois has addressed this potential for unfairness in two ways. First, under the Illinois Mortgage Foreclosure Law, if the buyer under a long-term real estate installment contract has paid a substantial portion of the amount due, the contract is treated as a mortgage, giving the buyer substantial rights of notice, cure, and redemption of equity. *See* 735 ILCS 5/15–

1106(2) (statutory foreclosure required for real estate installment contracts with a term greater than five years, as to which less than 80% of the original purchase price remains due). Second, where the mortgage foreclosure procedure is not required, the seller must comply with the provisions of the Forcible Entry and Detainer Act (FEDA), 735 ILCS 5/9–101 to 5/9–119, in order to effect a forfeiture of the buyer's interests. *See* Peter A Hess & Daniel J. Slattery, *Terminating Installment Contracts, in Real Estate Litigation,* at § 13.11 (Illinois Institute for Continuing Legal Education, 1994) (suggesting only forcible entry and detainer proceedings as a means to effect a forfeiture).[1] The forcible entry and detainer provisions include a requirement of at least 30–days' notice to the defaulting buyer, giving an opportunity to cure the default, 735 ILCS· 5/9–104.1, and they allow a court entering judgment for the seller to stay the effect of the judgment for up to 60 days, as long as a similar stay was not granted within the preceding five years, again to permit a cure by the buyer, 735 ILCS 5/9–110.[2]

In the present case, Countrywide, holding the rights of the seller under a real estate installment contract, provided Brown, as the buyer, with a notice intended to comply with the requirements for a forcible entry and detainer action, but before any such action was filed, Brown filed the pending Chapter 13 case.

██ *Cure of default in Chapter 13.* Chapter 13 of the Bankruptcy Code allows a debtor who has fallen behind in payments under an installment contract to "cure" the default through a Chapter 13 plan. 11 U.S.C. § 1322(b)(3) and (5). Curing a default has the effect of restoring the situation that existed prior to the default, thus canceling the other party's contractual remedies, such as acceleration of payments or forfeiture of the debtor's contractual interests, and allowing the debtor to continue making the required installment payments as though no default had occurred. *In re Clark,* 738 F.2d 869, 872 (7th Cir.1984) ("[T]he plain meaning of 'cure,' as used in § 1322(b)(2) and (5), is to remedy or rectify the default and restore matters to the status quo ante."); *cf. In*

1. It has been suggested that other forms of relief—such as ejectment or declaratory judgment—might be available to enforce forfeiture of an Illinois real estate installment contract. *See, e.g.,* Danielson, *supra,* 1986 U. Ill. L.Rev. at 100. However, there appear to be no recently reported decisions enforcing forfeiture through any mechanism other than forcible entry and detainer, and it seems likely that if a court did entertain an alternative form of action, it would incorporate the buyer protections of the forcible entry and detainer procedure.

2. The relevant language of 35 ILCS 5/9–110 is as follows:

[I]f the action is brought under [the FEDA] and is based upon a breach of a contract entered into on or after July 1, 1962 for the purchase of such premises, the court, by order, may stay the enforcement of the judgment for a period not to exceed 60 days from the date of the judgment.... If during such period of stay the defendant pays the entire amount then due and payable under the terms of the contract other than such portion of the principal balance due

under the contract as would not be due had no default occurred and costs and, if the contract provides therefor, reasonable attorney's fees as fixed by the court, and cures all other defaults then existing, the contract shall remain in force the same as if no default had occurred. The relief granted to a defendant by this Section shall not be exhausted by a single use thereof but shall not be again available with respect to the same contract for a period of 5 years from the date of such judgment. Whenever defendant cures the default under the contract pursuant to this Section, the defendant may within the period of stay file a motion to vacate the judgment in the court in which the judgment was entered, and, if the court, upon the hearing of such motion, is satisfied that such default has been cured, such judgment shall be vacated. Unless defendant files such motion to vacate in the court or the judgment is otherwise stayed, enforcement of the judgment may proceed immediately upon the expiration of such period of stay and all rights of the defendant in and to the premises and in and to the real estate described in the contract are terminated.

re *Madison Hotel Assocs.*, 749 F.2d 410, 419–20 (7th Cir.1984) (discussing a similar "cure" provision in Chapter 11). However, the right to cure cannot last indefinitely. At some point, the other party to a contract in default will have taken sufficient action to terminate the contract that it is no longer susceptible to being cured.

The question of when a contract has effectively terminated for purposes of curing defaults in Chapter 13 has been most thoroughly treated in the context of mortgages. Under the Code as originally drafted, the cure provisions of Chapter 13 applied to mortgages in the same way as to any contract in default, and the courts had to determine at what point in the mortgage foreclosure process the right to cure a default was no longer available. In *In re Josephs*, 85 B.R. 500, 504 (Bankr. N.D.Ill.), *aff'd*, 93 B.R. 151 (N.D.Ill.1988), this court reviewed the Seventh Circuit decisions bearing on the issue and concluded that "a debtor's right to cure a mortgage default under Section 1322(b)(5) is extinguished when the foreclosure process reaches a point at which the pre-foreclosure relationship between the mortgagor and mortgagee has ended, so that ... there is no longer any mortgage to cure." *Josephs* found that this point was reached at the time of the foreclosure sale, when a third party might obtain an interest in the mortgaged property. 85 B.R. at 506. More recent decisions regarding the cure of mortgages in Chapter 13 are less helpful, because a 1994 amendment to the Code, § 1322(c)(1), creates a special rule for termination of the right to cure mortgage defaults, not otherwise applicable.[3]

A related issue, however, continues to be relevant. Pursuant to § 1322(b)(7), a Chapter 13 plan may provide for the assumption of "unexpired" leases. Such assumptions are subject to § 365 of the Code, which requires that if there has been a default in such a lease, the default must be cured. 11 U.S.C. § 362(b)(1). Thus, as with installment contracts, the question arises as to when a lease has terminated, so that it is too late to assume the lease and cure defaults in Chapter 13, specifically, whether the lease has "expired" on account of the lessor's efforts to terminate it for default in payments. Of critical importance, a landlord seeking to terminate a residential lease under Illinois law must employ the same forcible entry and detainer procedure, under the Illinois FEDA, as a seller seeking forfeiture of a real estate installment contract. *In re Williams*, 144 F.3d 544, 547 (7th Cir.1998) ("[F]or an Illinois landlord to evict a tenant, it must file a forcible entry action....")

The Seventh Circuit has addressed the issue of lease termination in two opinions. The first, *Robinson v. Chicago Housing Authority*, 54 F.3d 316, 322 (7th Cir.1995), holds that a lease has terminated (so that it cannot be assumed and cured) at least as of the time the court in an FEDA proceeding issues a judgment for possession to the landlord, because, as of that point, "the landlord has surely taken the steps requisite for termination," and there is "no recourse left for the tenant to revive the lease." The second decision, the *Williams* decision cited above, holds that a lease may be terminated at an earlier point, as of the landlord's filing of the FEDA proceeding. 144 F.3d at 549 (where the landlord has filed an FEDA action prior to bankruptcy, a bankruptcy court may properly allow the action to proceed in state court, since, unless the tenant had valid defenses to the action, "nothing in Illinois law would invalidate [the landlord's] ending [the] lease").

 *Termination of Illinois real estate installment contracts.* Two conflicting precedents bear on the question of when

---

3. Section 1322(c)(1) specifies that mortgage defaults may be cured until the property is "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." This provision has itself generated sub-

stantial controversy, largely revolving around the extent to which the foreclosure sale must be "final" under state law. *See, e.g., In re Crawford*, 215 B.R. 990 (Bankr.N.D.Ill.1997), *rev'd*, 217 B.R. 558 (N.D.Ill.1998).

an Illinois real estate installment contract has terminated, so that it can no longer be cured through a Chapter 13 plan. One approach is reflected in *In re Layton*, 138 B.R. 219, 224 (Bankr.N.D.Ill.1992), which holds that, once the seller properly declares a forfeiture, a real estate installment contract is "terminated in accordance with its terms" with no need for the seller "to first seek a court determination to that effect." *In re Jones*, 99 B.R. 877 (Bankr. N.D.Ill.1989), is in accord with this holding. An alternative approach was taken by *In re Seversen*, 1995 WL 29634 (N.D.Ill.1995). Here, the court pointed to the stay of enforcement that the court in an FEDA proceeding may award, once in five years, to a defaulting buyer under a real estate installment contract:

> Illinois' Forcible Entry and Detainer Act gives a defaulting party under a real estate installment contract the opportunity to cure its default after judgment is entered against that party. The court may stay enforcement of the judgment for 60 days. If the defendant cures its default during the period of stay, the contract remains in force the same as if no default had occurred. 735 ILCS § 5/9–110.

1995 WL 29634 at *7. The court in *Seversen* likened the stay of enforcement under the FEDA to a period of redemption for a mortgage, and held that "the point at which a debtor loses the right to cure default under § 1322(b) is the date on which the statutory period for redemption expires." *Id.* at *8.[4]

■ The *Seversen* approach is more consistent with the teaching of the Seventh Circuit. In *Robinson*, the Seventh Circuit pointed out that, in the situation of Illinois leases, once a forfeiture has been properly declared by the landlord, there is nothing that the tenant can do to revive the lease, and the court contrasted this legal situa-

tion with the one prevailing under Florida law:

> Florida anti-forfeiture laws give courts the power to grant relief against forfeiture "whenever it is just and equitable to do so ..." as long as the tenant tenders the arrears of rent with accrued interest.... Unlike Florida, Illinois does not have a similar anti-forfeiture law awarding such great discretion to the courts.

54 F.3d at 322 n. 2. Of course, as to real estate installment contracts, the Illinois FEDA provides precisely the discretion that the Florida law accords in connection with leases, limited only by the provision that it can only be exercised once in five years. The result is that a seller under a real estate installment contract does not enjoy a fixed right to forfeiture under Illinois law simply because the contract so provides. Unless the buyer has already obtained a stay within the preceding five years, the seller can only obtain a termination of a real estate installment contract after the passage, without cure, of any stay ordered by the court in FEDA proceedings. Until the end of such a stay, the contract remains binding between the parties, subject to complete reinstatement upon tender by the debtor of the amounts in default.

The debtor in the present case, Sheldon Brown, has never obtained a stay of judgment under the FEDA, and so Countrywide's declaration of forfeiture could not suffice to terminate the contract, which remains subject to cure under Chapter 13.

Brown raises other questions involving the effectiveness of the notices of forfeiture served by Countrywide, and the method of service employed, but in light of the determination made here, these questions need not be addressed.

---

4. The debtors in *Seversen* had already utilized the stay under the FEDA during the five year period prior to their bankruptcy and thus had no further cure right under Illinois law, and

only for this reason did the *Seversen* court conclude that they had no right to cure the default in their real estate installment contract through a Chapter 13 plan. *Id.*

## Conclusion

Because the debtor retains an interest in the real estate installment contract that may be cured in Chapter 13, Countrywide's motion for relief from the stay must be denied. A separate order to that effect will be entered.